■ MARIA PILAR BUSTOS et al., Respondents, v LENOX HILL HOSPITAL et al., Appellants, et al., Defendant. [816 NYS2d 24]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered June 28, 2005, which denied defendants' motion for a protective order prohibiting plaintiffs from inspecting, photographing and videotaping the hospital's labor and delivery suite, reversed, on the law, the facts and in the exercise of discretion, without costs or disbursements, and the motion granted.

In this medical malpractice action against Lenox Hill Hospital and two treating physicians for injuries sustained by plaintiff Maria Pilar Bustos during childbirth, plaintiff alleges that she suffered a symphysis pubis diastasis—a separation and/or fracture of the lower pelvic bone—as a result of the use of excessive force in a procedure[1] performed on her in the delivery room. On March 28, 2005, after making an informal demand during plaintiff's deposition, plaintiffs served on defendants a demand for entry upon land to inspect, photograph and videotape the labor and delivery suite at Lenox Hill Hospital in which plaintiff gave birth. Defendants moved for a protective order denying plaintiffs' demand, arguing that inspection of the labor and delivery suite has no relevance to the litigation and that it would intrude on a sensitive patient area for no legitimate purpose. In opposition, plaintiffs noted that, at plaintiff's deposition, defendant had questioned her about the bed, the footrest and the location of various people in the delivery room and that since defendants obviously have access to the delivery room, plaintiffs should also be able to view the room and refresh their recollections of its layout. Supreme Court denied defendants' motion, finding the information as to the layout of the delivery room relevant, and noting that the size and shape of the room might be probative of whether defendants were able to push plaintiff's legs over her abdomen and spread them widely.

CPLR 3101 (a) provides for the "full disclosure of all matter material and necessary in the prosecution or defense of an action." Under this standard, disclosure is required "of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" (*Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 [1968]). Since plaintiffs have failed to show that the inspection sought is "material and necessary," the protective order should have been granted.

---

**1.** The procedure, known as the McRoberts maneuver, is performed to facilitate delivery by forcefully pushing the patient's thighs onto the abdomen and simultaneously spreading the patient's legs outward (*see Welch v Scheinfeld*, 21 AD3d 802 [2005]).

While, as noted, plaintiffs argued in opposition to the motion for a protective order that plaintiffs should have an "opportunity to view the room and to refresh their recollections of its layout" and claimed that knowledge of the layout will assist plaintiffs' counsel in questioning the doctors and nurse at their EBTs, plaintiffs failed to explain what relevance the layout of the delivery room had to any issue in the case. Nor does the reasoning offered by the Supreme Court—that "the size and shape of the room might be probative as to whether defendants were able to push [plaintiff's] legs over her abdomen and spread them widely"—justify an inspection of the delivery room. First of all, plaintiffs do not dispute that the room was large enough for this purpose. Moreover, knowledge of the layout and size of the room can be made available to plaintiffs by other means, i.e., a floor plan. Plaintiffs' argument on appeal that the inspection will help establish that there was sufficient space in the room to perform the McRoberts maneuver properly is similarly unavailing.[2] The issue is not whether there was sufficient space to perform the procedure properly but whether the procedure was performed and, if so, whether it was performed properly. In any event, as noted, a floor plan of the area would clarify—even better than a photograph—whether there was enough room to perform the procedure properly. As to the dissent's concern that a floor plan would not show the furnishings and equipment that were in the room when plaintiff gave birth, there is no reason why a floor plan could not include such information, to the extent it is available. In that regard, a floor plan would indeed be more reliable as to the conditions at the relevant time than an inspection three years after the fact. Concur—Marlow, J.P., Sullivan and Gonzalez, JJ.

Catterson, J., dissents in a memorandum as follows: I respectfully dissent because I believe that the majority's determination prohibiting the plaintiffs from inspecting the location of the alleged malpractice at a time convenient to the hospital and its patients contravenes the broad disclosure standard mandated by CPLR 3101.

The law pertaining to disclosure in New York is clear and well

---

**2.** In our view, the allegation in the complaint that defendants "fail[ed] to properly position the plaintiff during labor and delivery" does not, as the dissent concludes, raise the issue of space in the delivery room. Viewed in context, there is nothing to suggest that this is anything but a reference to the positioning of plaintiff's body, and not one to her position in reference to the room.

established. The scope of disclosure provided by CPLR 3101[1] is generous, broad, and is to be construed liberally. (*Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 [1968] [phrase "material and necessary" must be "interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy"].) In *Allen*, the Court of Appeals cited approvingly to this Court's decision, *Rios v Donovan*, in which we held that the "purpose of disclosure . . . is to . . . ascertain truth and to accelerate the disposition of suits." (*Rios*, 21 AD2d 409, 411 [1st Dept 1964].) Indeed, this Court has always been at the forefront of enlarging rather than reducing the permissible use of pretrial procedures. (*See Mudge v Hughes Constr. Co.*, 16 AD2d 106, 107 [1st Dept 1962] [provisions for pretrial discovery and inspection are to be liberally applied], quoting 1934 Report of Commn on Admin of Justice in NY State, at 41-42 ["each party should have unrestricted access to the sources of evidence"].)

Thus, New York's disclosure standards are comparable to the liberal, federal standard of discovery under Federal Rules of Civil Procedure rule 26 (b) (1). (*See Allen v Crowell-Collier Publ. Co.*, 21 NY2d at 407; *see also West v Aetna Cas. & Sur. Co.*, 49 Misc 2d 28, 29 [1965], *affd in relevant part* 28 AD2d 745 [3d Dept 1967] ["(d)isclosure extends to all relevant information calculated to lead to relevant evidence"].)

It is perplexing, therefore, that the majority finds that the plaintiffs failed to explain what relevance the layout of the delivery room had to any issue in the case. Instead, it concludes unequivocally that "the issue is not whether there was sufficient space to perform the procedure properly but whether the procedure was performed and, if so, whether it was performed properly."

In my opinion, any determination as to whether the procedure was performed properly should depend in part on where, and under what conditions, it was performed. Further, contrary to the defendants' assertions, the plaintiffs did raise the issue of space in the delivery suite. In their verified complaint, the plaintiffs alleged "failure to properly position the plaintiff during labor and delivery." They further claimed that the plaintiff wife suffered a fracture of her pubic bone when her legs were improperly maneuvered during the delivery.

Indeed, the procedure that was allegedly negligently performed is known as the McRoberts *maneuver*. Webster's Dictionary defines maneuver as "a physical movement esp. when skill-

---

1. CPLR 3101 (a) provides that "There shall be full disclosure of all [evidence] material and necessary in the prosecution or defense of an action, regardless of the burden of proof."

ful." To state the obvious, physical movement requires space, and if such maneuver was performed then one relevant inquiry surely encompasses the question of whether the medical personnel attending the plaintiff had sufficient, unrestricted, unfettered space to perform such physical skillful movement.

In the plaintiffs' words, the inspection will help establish whether "given the size of the room, the equipment which was then in that room, the place where each such item of equipment was then located, and the relative position of each person then in the room, there was sufficient space and opportunity to perform the McRoberts maneuver properly."

Ultimately, given the broad and expansive nature of disclosure standards, it is perhaps more helpful to look at what CPLR 3101 prohibits rather than what it permits. Within that context, it is generally acknowledged that the rules "may still permit a card or two to remain close to [a] party's vest" but "[w]ith limited exceptions . . . CPLR 3101 seeks to expose virtually the entire deck." (Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:4, at 18 [2005].)

The limited exceptions governed by CPLR 3101 (b), (c) and (d) (2) most notably include privileged material, work product, and materials prepared in anticipation of litigation. In this case, the defendants do not assert any privileges or immunities. Their objection is raised on two grounds: first, in their estimation, the delivery room is of no relevance to the litigation; second, an inspection would intrude on a sensitive patient area "given the delivery room's private and confidential nature." I find the latter assertion without merit, not to mention disingenuous.[2] The defendants do not rely on any legal authority to support their contention that an empty hospital delivery room is a confidential private area. Nor do they specify any items or materials warranting confidentiality protection. Even were they to do so, the rules of disclosure require that we balance those interests against the competing needs of the plaintiffs. The latter then requires assessing, inter alia, the plaintiffs' ability to gather such information elsewhere. The defendants suggest, and the majority agrees that a floor plan would provide the information the plaintiffs are seeking. The plaintiffs reject that notion, and I agree with their observation that such floor plan or "as-built blueprint" would not reveal anything added to the room after it

---

2. Defendant hospital objects to inspecting and photographing an empty delivery room but provides content for an Internet "cyberbaby" Web site where photos of babies born at the hospital are displayed to the public at large. (*See* <http://growingfamily.com/webnursery/default.asp>, cached at <http://www.courts.state.ny.us/reporter/webdocs/growingfamily_com_Web Nursery.htm>.)

was built, or any furnishings or equipment or lighting or any other condition in the room at the relevant time. In effect, a floor plan would add no relevant information or evidence to this case. Finally, it is beyond cavil that a blueprint is merely a two-dimensional representation of the delivery room that would require expert interpretation to render it in three dimensions for the jury's examination.

It is true that in discovery determinations this Court is vested with the power to substitute its own discretion for that of the trial court even in the absence of abuse. (*Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740, 745 [2000].) For the foregoing reasons, however, I believe that in reversing the motion court, the majority, in this case, exercises its discretion improvidently.