OPINION OF THE COURT
Simons, J.
Defendant has been convicted of criminal possession of a weapon, third degree (Penal Law § 265.02 [4]). He contends the judgment must be reversed because it is based upon the statutory presumption of possession arising from his presence in an automobile and the court erroneously prevented him from presenting evidence to rebut the presumption (see, Penal Law § 265.15 [3]). The evidence he sought to introduce consisted of statements made during a conversation between codefendant Pena and his attorney which had been translated by defendant. Pena’s counsel objected to the evidence claiming that defendant was acting as Pena’s interpreter and therefore the statements were privileged communications. The trial court sustained the objection and defendant was subsequently found guilty. On appeal to the Appellate Division that court affirmed the judgment. We conclude the court’s ruling was error and requires a new trial.
The issue arises from charges that defendant and two others, codefendants Pena and Mejia, robbed stereo equipment from Thomas Ridley and his brother, John. The theft occurred when defendants, seated in a parked car late one evening, were approached by the Ridleys offering to sell the equipment to them. Defendant, seated in the back seat, examined one of the pieces, a double cassette player, and then returned it to Thomas Ridley. While Mejia was examining the other piece, an argument developed over price and, without warning, Pena drove off with codefendant Mejia still holding Ridleys’ equipment; The Ridleys got in their van and pursued defendants to a closed gas station where Pena had stopped the car. John Ridley approached defendants and demanded return of the *83 equipment. When he did so codefendant Pena, who was seated in the driver’s seat, reached out the window and pressed a .38 caliber revolver into Ridley’s ribs. When Ridley felt the gun he ran but as he did so he slipped and fell. He testified that when he fell he looked back and saw Pena leave the car, point the gun at him, and then return to the car. John Ridley testified that before he and his brother fled he saw defendant get out of the car with the gun and threaten them.
The three defendants were subsequently apprehended by police. At the time, Pena was driving, Mejia was seated in the front passenger seat, and defendant was seated in the rear seat. The missing stereo equipment was found in the front compartment near Mejia. The only handgun the police recovered was found under papers on the floor of the rear seat.
Defendants were arrested and charged with robbery, first degree, robbery, second degree, criminal possession of a weapon, second degree, and criminal possession of a weapon, third degree. The charges against codefendant Mejia were dismissed during trial. The jury found defendant Pena guilty of robbery, first degree, petit larceny, and criminal possession of a weapon, second and third degrees. It found defendant guilty of criminal possession of a weapon, third degree, and acquitted him of the remaining charges.
Codefendant Pena did not testify during the trial but defendant took the stand and stated that had he known there was a gun in the car he would not have entered it because he was on probation. He did not learn of the gun, he said, until Pena produced it at the gas station from between the front bucket seats, where it was concealed, and threatened Ridley. He sought to support his claim by testifying to admissions about the gun Pena made to his counsel. Defendant came by that information when he translated a conversation between the two men while he and Pena were incarcerated together in Rikers Island following their arrest.
Defendant contends that the attorney-client privilege does not protect these statements from disclosure because under the circumstances Pena could have no reasonable expectation that they were confidential. This is so, he claims, because he was not retained as an interpreter, he did so as an accommodation, and at the time he and Pena had an adversarial relationship. At trial, Pena’s counsel rested on his characterization of defendant as an interpreter to sustain his claim of privilege. He neither suggested any details of the meeting to support the claim nor requested a voir dire.
*84 The attorney-client privilege, which is codified in CPLR 4503 (a), enables one seeking legal advice to communicate with counsel for this purpose secure in the knowledge that the contents of the exchange will not later be revealed against the client’s wishes (see, People v Mitchell, 58 NY2d 368, 373). The privilege belongs to the client and attaches if information is disclosed in confidence to the attorney for the purpose of obtaining legal advice or services. The burden of proving each element of the privilege rests upon the party asserting it and even if the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case where strong public policy requires disclosure (Rossi v Blue Cross & Blue Shield, 73 NY2d 588, 592; Matter of Priest v Hennessy, 51 NY2d 62, 68-69; see also, People v Mitchell, supra, at 373).
Generally, communications made between a defendant and counsel in the known presence of a third party are not privileged (People v Harris, 57 NY2d 335, 343; People v Buchanan, 145 NY 1, 26). An exception exists for statements made by a client to the attorney’s employees or in their presence because clients have a reasonable expectation that such statements will be used solely for their benefit and remain confidential (see, Sibley v Waffle, 16 NY 180, 183). Similarly, communications made to counsel through a hired interpreter, or one serving as an agent of either attorney or client to facilitate communication, generally will be privileged (see, United States v Kovel, 296 F2d 918, 921-922 [an accountant]; Jackson ex dem. Haverly v French, 3 Wend 337; see generally, Annotation, Attorney-Client Privilege-Extent, 96 ALR2d 125-150, §§ 9, 13).
The scope of the privilege is not defined by the third parties’ employment or function, however; it depends on whether the client had a reasonable expectation of confidentiality under the circumstances (see, Matter of Jacqueline F., 47 NY2d 215, 222; Matter of Kaplan [Blumenfeld], 8 NY2d 214, 219). Thus, in People v Mitchell (58 NY2d 368, supra) we held that a statement made to the attorney’s secretary, if it was made in the common area of a shared office where secretaries of other attorneys were present, was not privileged. Under those circumstances, the client could have no cognizable expectation of confidentiality even though he was not aware of the attorneys’ office arrangement. Similarly, statements made through a police officer interpreting a conversation between a client and an attorney would not be privileged because the conflicting interests of the parties would negate any reasonable expecta *85 tion of confidentiality notwithstanding the third party’s role as an interpreter.
The interests of the codefendants were similarly conflicted here. Under the general rule, a defendant does not enjoy a confidential privilege when communicating with counsel in the presence of another codefendant (United States v Simpson, 475 F2d 934 [DC Cir], cert denied 414 US 873; United States v Melvin, 650 F2d 641, 646 [5th Cir]; see also, Finn v Morgan, 46 AD2d 229, 234-236). If the codefendants are mounting a common defense their statements are privileged but unless the exchange is for that purpose the presence of a codefendant or his counsel will destroy any expectation of confidentiality between a defendant and his attorney (United States v McPartlin, 595 F2d 1321 [7th Cir]; Hunydee v United States, 355 F2d 183 [9th Cir]). Thus, in United States v Lopez (777 F2d 543 [10th Cir]) defendant, who had participated in a meeting between his codefendant and codefendant’s counsel, sought at trial to have codefendant’s counsel testify as to statements of the codefendant. The court held that Lopez’s presence destroyed any claim of privilege because he was not attending the meeting to build a joint defense or to join his codefendant’s defense team. Under those circumstances, Lopez’s interests were potentially adverse to his codefendant and therefore codefendant had no reasonable expectation of confidentiality.
In this case neither Pena nor the People established that defendant was an agent of Pena or his counsel, or that the relationship between the codefendants was otherwise such that Pena had a reasonable expectation that statements made in defendant’s presence would remain confidential. A mere accommodation does not create an agency and defendant was an interpreter only in the broadest sense of the word; he happened to be present when Pena’s counsel visited to verify information about the gun that Pena’s girlfriend had given counsel. Because neither Pena nor his attorney spoke the other’s language and could not communicate, defendant translated counsel’s questions and Pena’s answer confirming the truth of his girlfriend’s statements and did so apparently without being asked. Any inference that Pena expected his remarks to be confidential is overcome by the fact that defendant was not planning a common defense with Pena and, therefore, had an adversarial relationship to him.
It was Pena’s responsibility to establish facts sufficient to support the privilege and he failed to do so. Accordingly, the *86 claim of privilege should not have been sustained and defendant should have been permitted to disclose Pena’s statements if the evidence was otherwise admissible.
The People contend that Pena’s statements were not admissible, even if not privileged, because they were hearsay. They made no such objection at trial and from the limited record before us there appears to be a reasonable basis upon which the trial court may admit the statements as declarations against penal interest if Pena is not available to testify on the retrial (see, People v Settles, 46 NY2d 154). His statements that the gun belonged to his girlfriend, that he had obtained it from her and that he had put it in the car tended to shift criminal liability from defendant to himself; he was aware at the time he made the statement in the presence of a codefendant that any additional evidence connecting him to the weapon would be adverse to his penal interest; and the record contains independent evidence tending to suggest the trustworthiness of his statements.
Finally, the error was not harmless. Under established law the statutory presumption was available to establish a prima facie case against defendant (see, People v Lemmons, 40 NY2d 505, 510) and the People relied on it for that purpose during summations. Moreover, the court charged the jury, at the prosecution’s request, that all occupants in an automobile are presumed to possess a firearm found in it and explained that the presumption alone could be sufficient to convict defendant for criminal possession of a weapon, third degree. During deliberations the jury requested the court to recharge them on the possession counts and the court did so.
Thus, the applicability of the statutory presumption was put squarely in issue and a reasonable view of the record demonstrates that the jury’s verdict rests upon it. Manifestly, the jury rejected the People’s claim, based on Ridley’s testimony, that defendant actually possessed the weapon because it acquitted him of the counts charging robbery, larceny and criminal possession, second degree. His conviction of simple possession must have rested on the presumption therefore and defendant Vas entitled to rebut it by introducing evidence tending to prove that Pena possessed the gun. The excluded testimony would have enabled him to do that. If credited it would establish that the gun found in the car belonged to Pena’s girlfriend, that Pena had obtained it from her and that he had placed it in the car where it remained concealed until *87 he threatened the Ridleys. Although this was not direct evidence of Pena’s sole possession, when coupled with the facts already before the jury, i.e., that Pena was driving the car, that he initiated the robbery by driving away from Ridleys, that he displayed the gun during the robbery, and that the car did not belong to defendant, it might well have created a doubt in the jury’s mind sufficient to rebut the presumption. At least, we cannot say there is no significant probability that it would have done so (see, People v Crimmins, 36 NY2d 230, 242-243).
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.