■ In the Matter of the Estate of SALVADOR CLOUSE, Deceased. JAMES S. CLOUSE, as Administrator of the Estate of SALVADOR CLOUSE, Deceased, Appellant; ROSE FARINELLI, Respondent. [739 NYS2d 470] —Peters, J. Appeal from an order and judgment of the Surrogate's Court of Albany County (Marinelli, S.), entered December 19, 2000, which denied petitioner's application to compel respondent to deliver certain moneys and/or property in her possession to petitioner.

Salvador Clouse (hereinafter decedent) died on October 7, 1987. Respondent is decedent's daughter and petitioner is his son and the administrator of his estate. On December 15, 1986, decedent executed a power of attorney prepared by John Biscone appointing respondent as decedent's attorney-in-fact. In May 1987, respondent, accompanied by Arthur O'Connell, decedent's long-term nurse, met with Biscone and sought advice as to the manner in which decedent's savings bonds could be redeemed and whether she could be compensated for the services that she rendered because decedent wanted her to retrieve and cash savings bonds to ensure his continued home care.

According to respondent, Biscone did not advise against redemption and fully answered all questions regarding her compensation. After retrieving 46 savings bonds from decedent's safe deposit box to which only he held the key, respondent had her husband and O'Connell witness decedent's endorsement on these bonds. Decedent thereafter instructed her to redeem them, deposit the proceeds into a specific joint account that she held with him and utilize these funds to pay his bills and expenses. Respondent further averred that decedent instructed her to retain any remaining funds, after payment for his care, in gratitude for her years of service to him; O'Connell witnessed and later confirmed this statement.

The redemption of the savings bonds yielded $94,281.63, which was deposited as directed. Two days before decedent's death, respondent made three separate withdrawals totaling $53,711.11 and deposited these funds into an account held by her individually; there is no dispute that the difference between the initial amount deposited and the amount withdrawn represents funds expended for the benefit of decedent during his lifetime.

This action was commenced to compel respondent to deliver the net proceeds remaining from her redemption of these bonds to decedent's administrator. In a written decision following the submission of a joint record, Surrogate's Court found, inter alia, that decedent intended to make a gift of money remaining in the joint account to respondent and reiterated its earlier determination that Biscone's testimony concerning his conversations with respondent are precluded as privileged. Petitioner appeals.

Although the prior order concerning the admissibility of Biscone's testimony was not specifically appealed, the matter is properly before us pursuant to CPLR 5501 (a) (1). The purpose of the attorney-client privilege, codified in CPLR 4503 (a), is to allow "one seeking legal advice to communicate with counsel for this purpose secure in the knowledge that the contents of the exchange will not later be revealed against the client's wishes" (*People v Osorio*, 75 NY2d 80, 84; *see, Hoopes v Carota*, 74 NY2d 716, 717). While "[t]he privilege belongs to the client and attaches if information is disclosed in confidence to the attorney for the purpose of obtaining legal advice or services * * * [t]he burden of proving each element of the privilege rests upon the party asserting it" (*People v Osorio, supra* at 84; *see, Matter of Comprehensive Habilitation Servs. v Attorney Gen. of State of N.Y.*, 278 AD2d 557, 558, *lv denied* 96 NY2d 706). Respondent, having arranged for the meeting with Biscone for the sole purpose of acquiring legal advice concerning decedent's requests, sustained her burden in proving the privilege. Yet, we must agree with petitioner's contention that the privilege was waived when respondent testified, without objection, to both the content of her conversation with Biscone and the advice she received (*see, People v Shapiro*, 308 NY 453, 458; *People v Krawitz*, 151 AD2d 850, 851, *lv denied* 74 NY2d 742; *Jakobleff v Cerrato, Sweeney & Cohn*, 97 AD2d 834, 835). Our determination on this issue, however, is not dispositive.

What is dispositive is our conclusion that the transfer made by decedent was testamentary in nature and not, as Surrogate's Court concluded, a valid inter vivos gift. Although

" 'the findings of the trial court should be accorded deference, especially where * * * [they] depend upon the credibility of witnesses' " (*Sawhorse Lbr. & More v Perrotta*, 279 AD2d 733, 734, quoting *Blank v Blank*, 256 AD2d 688, 693), the burden was upon respondent to demonstrate "an intent to pass a present right of property" (*Matter of MacGregor*, 119 AD2d 909, 910) by making a transfer, either actual or constructive, which was accepted (*see, Gruen v Gruen*, 68 NY2d 48, 53; *Matter of MacGregor, supra* at 910). With the requirement that " '[t]he proof must be of great probative force and must clearly establish every element of a valid gift' " (*Matter of MacGregor, supra* at 910, quoting *Matter of Abramowitz*, 38 AD2d 387, 389, *affd* 32 NY2d 654), we find that respondent failed to sustained her burden in demonstrating that decedent made an irrevocable present transfer of his ownership of these funds to her during his lifetime such that he relinquished full dominion and control over them (*see, Gruen v Gruen, supra; Matter of Szabo*, 10 NY2d 94; *Matter of MacGregor, supra*).

Crew III, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order and judgment is reversed, on the law, with costs, and petition granted.