OPINION OF THE COURT
Lucy Billings, J.
Plaintiff, a New York attorney, sues defendants, all associated in various capacities with the television series Law & Order, for defamation arising from the depiction of a lead character in the “Floater” episode of Law & Order. He claims the episode was based on the scandal involving crimes by attorney Paul Siminovsky and Justice Gerald Garson, with which news media falsely had associated plaintiff, and cast an Indian-American of his age with the same first name in the Siminovsky role.
Plaintiff moves to compel disclosure. (CPLR 3124.) This decision and order address plaintiff’s request for production of specific documents. (CPLR 3120.) Upon oral argument, the court grants plaintiffs motion for the reasons and to the extent explained below.
I. Privilege
As the parties claiming an attorney-client privilege, defendants bear the burden to demonstrate confidential communications between an attorney and a client in the course of the attorney’s employment. (CPLR 4503; Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377-378 [1991]; People v Osorio, 75 NY2d 80, 84 [1989]; Gulf Ins. Co. v Transatlantic Reins. Co., 13 AD3d 278, 280 [1st Dept 2004].) Privileged attorney-client communications are absolutely immune from disclosure. (CPLR 3101 [b].)
A. A Form Filled out by Defendant Overmyer Regarding Whether “Floater” was Inspired by Real Events
The first document on defendants’ privilege log as acknowledged by defendants, a form filled out by defendant Eric Overmyer, the author of “Floater,” indicating whether it was inspired by real events, is not privileged because Overmyer did not reasonably expect the form to be confidential. (CPLR 4503 [a]; People v Osorio, 75 NY2d at 84; Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd’s, 263 AD2d 367, 368 [1st Dept 1999].) Overmyer testified at his deposition that he simply completed the form and handed it back to an assistant, without knowledge *458 or concern as to the form’s purpose or whether an attorney would review the form, and without any attempt to assure that the form reached its ultimate recipient in confidence. Overmyer did not simply transmit the form to an attorney through a secretary (People v Osorio, 75 NY2d at 84); instead, Overmyer handed over the form without any instruction, intent, or expectation that it ever be transmitted to an attorney, be used for legal advice or services, or be kept confidential. Overmyer further testified that after he completed the form, he had no idea where the form went or with whom it was exchanged.
Defendants’ privilege log describes this form as privileged because it is correspondence from defendant Michael Chernuchin, the “showrunner” for the “Floater” episode, to Patricia Cannon, vice-president for legal affairs at NBC Universal Television Group, seeking legal advice. Although that entity’s name is not identical to any defendant named, she attests that she served as counsel fo Law & Order’s writers and producers. In any event, Chernuchin’s eventual receipt and forwarding of a nonprivileged document to an attorney does not then transform the document into a privileged one. (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 379; Rossi v Blue Cross & Blue Shield of Greater N.Y., 73 NY2d 588, 594 [1989].)
Further on the receiving end of the form, Patricia Cannon describes her responsibilities as including the provision of legal advice and services for the production of Law & Order. She never specifies, however, that she ever provided legal advice or services for the “Floater” episode, let alone that she used the form for that purpose, if only to arrive at a legal opinion that the episode posed no legal concerns or to communicate any such concern or render any service to a client. In fact, both Overmyer and Chernuchin testified at their depositions that they never received any advice or service concerning the “Floater” episode. Absent any further justification for defendants’ claim of privilege, defendants raise no question that even the court’s in camera review might resolve.
B. Communication by Cannon to Outside Counsel
Defendants describe the second document on their privilege log as communication of a “printed memorandum filled in with handwritten information,” the same description used for the first document on their log, from Cannon, whom the parties refer to as in-house counsel, to outside counsel for one or more of defendants. (Aff of Ravi Batra, exhibit 7.) If these memoranda *459 are the same form, then, just as Chernuchin forwarding the form to in-house counsel does not cloak the form in privilege, in-house counsel simply forwarding it to outside counsel accomplishes nothing more. (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 379; Rossi v Blue Cross & Blue Shield of Greater N.Y., 73 NY2d at 594.) If the second document on the privilege log refers to a different “printed memorandum filled in with handwritten information,” then defendants must provide the memorandum to the court for an in camera examination, to confirm that the second document on the log represents a confidential communication for the purpose of legal advice or services. (CPLR 4503 [a]; Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 381; People v Osorio, 75 NY2d at 84.)
C. E-Mails to Overmyer and Other Defendants That the Complaint was Filed
Attorney-client privilege would protect e-mails from Cannon to Overmyer and other defendants, informing them the complaint in this action was filed, if the e-mails were confidential communications to the attorney’s clients regarding the litigation. (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 378.) Although defendants maintain that plaintiff only raises the issue whether Cannon actually represented Overmyer and other defendants after defendants have opposed his motion to compel and even after he has replied, defendants themselves raised the issue when they claimed a privilege in their opposition to plaintiff’s motion. (See Schultz v Gershman, 68 AD3d 426 [1st Dept 2009]; Jain v New York City Tr. Auth., 27 AD3d 273 [1st Dept 2006]; McNair v Lee, 24 AD3d 159, 160 [1st Dept 2005]; Morris v Solow Mgt. Corp., 8 AD3d 126, 127 [1st Dept 2004].) Regardless when the issue was raised, the fact that Overmyer and other defendants may not have been employed directly by defendant entities or NBC Universal Television Group would not waive the privilege regarding a confidential communication of legal advice between Cannon and defendants, because they shared a common interest in defending against plaintiffs claims. (U.S. Bank N.A. v APP Intl. Fin. Co., 33 AD3d 430, 431 [1st Dept 2006]; 330 Acquisition Co., LLC v Regency Sav. Bank, F.S.B., 12 AD3d 214 [1st Dept 2004].)
Nevertheless, defendants have not supplied the information CPLR 3122 (b) requires, either on a privilege log or in an affidavit on personal knowledge. Defendants thus do not satisfy their *460 burden to demonstrate privilege. (CPLR 4503; Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 377; People v Osorio, 75 NY2d at 84; Gulf Ins. Co. v Transatlantic Reins. Co., 13 AD3d at 280.) They failed to support their boilerplate claim of privilege either in their opposition or at oral argument, by their attorney’s supposition that “the emails, to my knowledge, were sent by in-house counsel.” (Transcript of proceedings at 23, July 8, 2010 [emphasis added].) Defendants therefore must produce a privilege log in conformance with CPLR 3122 (b), specifically identifying the e-mails defendants claim are privileged and explaining why. Defendants also must provide the e-mails to the court for an in camera review, to confirm that they, too, are confidential communications for purposes of legal services and thus subject to the attorney-client privilege. (CPLR 4503 [a]; Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 381; People v Osorio, 75 NY2d at 84.)
II. Relevance and Need
The standard allowing disclosure of “all matter material and necessary” (CPLR 3101 [a]) is by those terms broad and to be “interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity.” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]; Osowski v AMEC Constr. Mgt., Inc., 69 AD3d 99, 106 [1st Dept 2009].) Although this standard is liberal, it is not a limitless carte blanche. (Albert v Time Warner Cable, 255 AD2d 248 [1st Dept 1998]; Zohar v Hair Club For Men, 200 AD2d 453, 454 [1st Dept 1994]; Lopez v Huntington Autohaus, 150 AD2d 351, 352 [2d Dept 1989].) “The test is one of usefulness and reason ... to permit discovery of testimony which is sufficiently related to the issues in litigation to make the effort to obtain it in preparation for trial reasonable.” (Allen v Crowell-Collier Publ. Co., 21 NY2d at 406-407 [internal quotation marks omitted].)
A. Agreements between Defendants or Their Business Entities and Codefendant Wolf Films or Any Unit of NBC or Universal Defendants Involved in the Production of “Floater”
Because the relationships between the various associated business entities and their employees involved in producing “Floater” are complex, so, too, is unraveling defendants’ specific responsibilities. Any written agreements between these individuals and entities may be material if the documents clarify defendants’ particular responsibilities in the development of the *461 “Floater” episode. Employment contracts obviously show who employed whom, who was whose agent, and one defendant’s potential responsibility for the conduct of a codefendant, agent, or other collaborator.
Consequently, defendants must produce those parts of the requested agreements that pertain to any defendant’s authority, role, or responsibilities in the production of Law & Order episodes, whether or not specific to “Floater.” Because the disclosure standard is not limitless, however, defendants may redact information in such agreements that is not pertinent. (E.g. Matter of Anonymous v New York State Dept. of Health, State Bd. for Professional Med. Conduct, 65 AD3d 491, 494 [1st Dept 2009]; Detraglia v Grant, 68 AD3d 1307, 1308 [3d Dept 2009]; see Albert v Time Warner Cable, 255 AD2d 248 [1998]; Zohar v Hair Club For Men, 200 AD2d at 454; Lopez v Huntington Autohaus, 150 AD2d at 352.)
B. Defendants’ New York Times Subscription Delivery Tags
Plaintiff complains about a character in a finished television episode, not about a character merely in a script. Evidence of the news media consumed by defendants besides just the writer, who also were involved in production of the finished television show, is material and necessary because this evidence may indicate whether defendants were aware of plaintiffs characteristics or exposed to information about plaintiff on which defendants may have modeled the “Floater” character. Therefore they must produce the requested New York Times subscription tags for defendants besides Overmyer.
C. Overmyer’s Script for Another Law & Order Show
Plaintiff has not demonstrated any relation between his claims and a script Overmyer wrote several years before the “Floater” episode for a different television show. (Bustos v Lenox Hill Hosp., 29 AD3d 424, 426 [1st Dept 2006].) The fact that the script may have contributed to Overmyer being hired at Law & Order does not illuminate Overmyer’s actual functions at Law & Order or the creation of “Floater.” Therefore defendants need not produce any versions of a script Overmyer wrote for Law & Order: Criminal Intent.
III. Documents Already Produced or Not in Defendants’ Possession
Defendants maintain, and plaintiff acknowledges, that defendants already have produced color copies of script drafts and *462 full-size copies of a memorandum dated September 19, 2003, requested by plaintiff. Plaintiff also has accepted the affirmation of defendants’ attorney that defendants do not possess or have any access to any newspaper articles defendants reviewed in creating “Floater” or materials defendants reviewed in preparing for their depositions, other than the articles and other materials already produced.
IV Conclusion
For the foregoing reasons, the court grants plaintiffs motion to compel disclosure to the following extent. Within 20 days after service of notice of entry of this order, defendants shall produce:
(1) the form filled out by Overmyer indicating whether “Floater” was inspired by real events;
(2) agreements requested by plaintiff, insofar as they pertain to any defendant’s authority, role, or responsibilities in the production of Law & Order episodes, whether or not specific to “Floater”; and
(3) New York Times subscription delivery tags for any defendants besides Overmyer. (CPLR 3120 [1] [i]; [2]; 3124.)
Further, defendants shall produce within the same time a privilege log that (1) identifies the e-mails defendants received, notifying them that a complaint had been filed in this action, and (2) specifies why defendants claim the e-mails are subject to the attorney-client privilege. (CPLR 3122 [b]; 4503.) Finally, defendants shall deliver to the court, at 71 Thomas Street, Room 103, New York, New York, within the same time the second document listed on defendants’ current privilege log and the e-mails described above, for an in camera examination. (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 381.)
Other than the disclosure to which the parties stipulated on the record June 17, 2010, and July 8, 2010, the depositions ordered in the decision dated August 23, 2010, and the production of documents now ordered, the court denies plaintiff s motion to compel disclosure.