OPINION OF THE COURT
Joan B. Lefkowitz, J.
Motion by Gilbert E Hyatt for (1) an order quashing the subpoenas served by the State of California Franchise Tax *503 Board, by New York counsel pursuant to CPLR 3119 (d), on nonparties, the custodian of records for U.S. Philips Corporation, Jack Haken, and Algy Tamoshunas, or (2) alternatively, for a protective order pursuant to CPLR 3103 that limits the scope of the subpoenas to cover only material and necessary information, condition the production of any responsive documents to allow Gilbert Hyatt to review the same to prevent disclosure of common interest privileged material, and for a confidentiality order.
It is ordered that the motion is decided as follows:
Factual Background
The California Franchise Tax Board (hereinafter the FTB), a California state agency with the responsibility of collecting income tax for the State of California, commenced audits of Gilbert P. Hyatt (hereinafter Hyatt) in California regarding his 1991 and 1992 nonresident or part-year resident income tax returns in 1993 and 1996, respectively. In April 1996 and August 1997, the FTB issued assessments of taxes, penalties and interest against Hyatt for the underpayment of taxes for the tax years 1991 and 1992. The FTB based the tax assessments upon its finding that Hyatt did not become a resident of Nevada until April 3, 1992. Hyatt filed protests to the assessments for both years claiming that he had moved to Nevada from California on September 26, 1991, and had continued to reside in Nevada since that time. Accordingly, Hyatt asserted that he did not owe taxes to California for income received after September 26, 1991. The FTB’s Protest Division reinvestigated the tax assessments from 1996 to 2007, during which time it conducted discovery. On November 1, 2007, the FTB issued its final determinations finding that no changes would be made to the assessments of taxes, penalties and interest for the underpayment of taxes for the tax years 1991 and 1992.[1]
In 2008, Hyatt filed appeals of the FTB’s final determinations to the California State Board of Equalization (hereinafter SBE). On August 23, 2010, Hyatt filed his appellant’s reply with numerous affidavits annexed as exhibits in support of his claim *504 that he moved to Nevada on September 26, 1991. By letter dated September 20, 2010, the SBE granted the FTB an extension of time to file supplemental briefs until June 30, 2011. On June 30, 2011, the FTB filed a supplemental brief wherein it stated that it intended to file an additional brief in the matter. Counsel for Hyatt objected by letter to the SBE to any additional briefing by the FTB on the ground that the additional brief was unauthorized under the SBE’s Rules for Tax Appeals, and requested an order prohibiting the FTB from filing the additional brief (exhibit E to Hyatt affidavit). By letter, the SBE responded that the briefing in the appeal was governed by the provisions of the SBE’s Rules for Tax Appeals, which the SBE trusted the parties would abide by, and, if issues later arose due to untimely submissions, the SBE would address them at that time (court exhibit 1). Hyatt’s appeals are now pending before the SBE.
On March 11, 2011, the Chief Counsel for the California State Controller issued subpoenas duces tecum on nonparties, the custodian of records of U.S. Philips Corporation (hereinafter U.S. Philips), Jack Haken, and Algy Tamoshunas. Hyatt, an inventor, entered into an exclusive licensing agreement with U.S. Philips, effective July 1991 (hereinafter 1991 agreement), which granted U.S. Philips a license under a group of Hyatt’s patents for its own use, as well as the exclusive right to license additional patents to other companies. Haken and Algy Tamoshunas were in-house counsel for U.S. Philips and worked with Hyatt on the licensing of his patents by U.S. Philips to other companies. In support of the subpoena duces tecum, William Dunn, in-house counsel for the FTB, stated in his declaration that the primary legal issues in the administrative tax appeals were Hyatt’s assertion that he became a nonresident of California in 1991, Hyatt’s objection to the proposed imposition of a fraud penalty, and Hyatt’s contention that he did not operate a business from California through December 31, 1992, which generated “California source income.” The subpoenas duces tecum sought, inter alia: all documents relating to or discussing the agreement between Hyatt and U.S. Philips; documents regarding any license or sublicense under any Hyatt patent; all documents reflecting money paid for a license or sublicense under any Hyatt patent; all documents discussing or reflecting any plan or agreement by Hyatt and U.S. Philips to seek revenues from the licensing or sublicensing of any Hyatt patent; all communications sent or received as to certain *505 patents; billing of counsel for work performed, on behalf of, or relating to, Hyatt; all documents regarding negotiations; drafting and finalizing agreements between Hyatt and various corporations; and all communications between Hyatt and personnel for U.S. Philips.
In pursuit of additional discovery in the administrative tax appeals, the FTB, by the Attorney General of California, petitioned the California Superior Court for the issuance of out-of-state depositions of various nonparties, including the custodian of records of U.S. Philips, Jack Haken, and Algy Tamoshunas, and to compel the nonparties to comply with the previously issued subpoenas duces tecum (exhibit B to Hyatt affidavit). On April 14, 2011, the Clerk of the Superior Court of California, County of Sacramento, issued commissions to take the depositions on the nonparties in New York and provided that the nonparties were to produce documents set forth in “Attachment 4” at the time of the depositions (exhibit A to Hyatt affidavit).[2]
Motion to Quash Subpoenas or for a Protective Order
Before this court is a motion by Hyatt seeking an order quashing the subpoenas served by the FTB on U.S. Philips, Jack Haken, and Algy Tamoshunas in New York. The commissions for the subpoenas were issued by a clerk of the California Superior Court pursuant to the California Code (Cal Code of Civ Pro § 2026.010)[3] and the New York subpoenas were issued by counsel pursuant to CPLR 3119 (e). Accordingly, no judicial review of the subpoenas has been conducted.
Initially, this court notes that the subpoenas were served pursuant to the newly enacted CPLR 3119, which became effective January 1, 2011. CPLR 3119 provides that out-of-state judicial *506 subpoenas[4] can be submitted to either the county clerk where the discovery is to take place (CPLR 3119 [b] [1]), or an attorney licensed to practice in New York (CPLR 3119 [b] [4]). Judicial subpoenas include those issued by the clerk of the court (CPLR 2308 [a]). The statute does not require judicial review of the subpoena before it is served in New York. The court notes that although the legislative intent behind CPLR 3119 was to simplify the steps required for discovery in connection with an out-of-state judicial action (see Introducer’s Mem in Support, 2010 NY Senate Bill S4256, Bill Jacket, L 2010, ch 29; Aloe, Outside Counsel, New CPLR §3119 Promises to Ease Path for Out-of-State Depositions, NYLJ, Feb. 22, 2011, at 4), the statute does not explicitly state that an out-of-state action must be pending to serve a subpoena pursuant to the statute. Notably, CPLR 3102 (e), which prior to the enactment of CPLR 3119 was the only mechanism for obtaining discovery in New York pursuant to an out-of-state subpoena, specifically provides that a judicial action must be pending in another jurisdiction. The legislative history further indicates that the statute contemplated that the scope of the examination under the subpoena would be determined by the state in which the action for which the discovery sought is pending, but that discovery pursuant to the subpoena, as well as any motions to quash, enforce, or modify a subpoena would comply with the rules of New York State (Introducer’s Mem in Support, 2010 NY Senate Bill S4256, Bill Jacket, L 2009, ch 29). Where, however, the laws of the other state permit the issuance of a commission for a subpoena by the clerk of the court, without judicial review, such as in California, the new statute has unwittingly shifted the burden of determining the propriety and scope of the subpoena to the court in New York.
The FTB asserts that this court should enforce the California Superior Court’s decision to issue the commission authorizing the depositions and demand for document production pursuant to the Full Faith and Credit Clause of the United States Constitution. The FTB, however, concedes that the Full Faith and Credit Clause applies only to judgments (Fiore v Oakwood Plaza Shopping Ctr., 78 NY2d 572, 578 [1991]; Matter of *507 Bennett, 84 AD3d 1365 [2d Dept 2011]). The Full Faith and Credit Clause is, therefore, inapplicable to the enforcement of the California Superior Court's commission.
Alternatively, the FTB contends that the California Superior Court's commission should be enforced without modification under the principles of comity. The FTB asserts that the principles of comity require this court to give deference to the decision by the California Superior Court regarding discovery. In the event that the California Superior Court had reviewed the application for the commissions and made determinations with respect to the scope of disclosure, this court would be more inclined to agree with the FTB's contention. This, however, was not the case. Instead, the commission was issued by the clerk of the California court without judicial review. Moreover, CPLS 3119 specifically authorizes applications for protective orders and to quash or modify an out-of-state subpoena served in New York under the statute. Further, as noted earlier, the legislative history of CPLR 3119 contemplates that the discovery authorized by a subpoena served pursuant to the statute must comply with the rales of New York.
In view of the foregoing, this court is now required to determine the propriety of the subpoenas which are the subject of this motion. The parties raise the following issues on this motion: (1) standing of Hyatt to challenge the subpoenas; (2) the authority of the FTB to serve subpoenas in the context of the administrative tax appeals; (3) whether the subpoenas are over-broad since they are not limited in time or scope; and (4) whether the documents which are demanded in the subpoenas are privileged.
Standing
In the context of a motion to quash a subpoena, where the movant is not the person being subpoenaed, the movant must demonstrate a proprietary interest in the subject matter or a privileged communication (38-14 Realty Corp. v New York City Dept. of Consumer Affairs, 103 AD2d 804 [2d Dept 1984], appeal dismissed 64 NY2d 648 [1984]; Knight Equity Mkts. L.P. v McCarthy, 2007 NY Slip Op 33757[U] [Sup Ct, NY County 2007]).
Initially, the FTB contends that Hyatt has no standing to challenge the subpoenas since he cannot establish a proprietary interest in the subject matter. The FTB contends that the documents which are the subject of the subpoenas duces tecum belong to U.S. Philips, not Hyatt. Moreover, the FTB contends *508 that Hyatt’s status as a signatory of licenses and other agreements with U.S. Philips does not give him a proprietary interest in the documents. The FTB relies, inter aha, upon 38-14 Realty Corp. v New York City Dept. of Consumer Affairs (103 AD2d 804 [1984]), wherein the Court held that a party to contracts did not have standing to challenge the subpoena requiring production of those contracts. The FTB also relies upon Knight Equity Mkts., L.P. v McCarthy (2007 NY Slip Op 33757[U] [2007]). In Knight Equity Mkts., the court held that movant did not have standing to challenge a subpoena served on movant’s stock broker, which sought a list of customers who bought certain stock, since movant failed to demonstrate a proprietary interest in the documents. Specifically, the court held that movant’s conclusory allegations that the documents were confidential and related to proprietary business activities were insufficient to demonstrate a proprietary interest in the documents.
Hyatt contends that he has statutory standing to challenge the subpoenas insofar as CPLR 2303 (a) and 3120 (3) provide that a subpoena duces tecum must be served on all parties so that it is received before the production of books, papers or other things. Hyatt relies upon Morano v Slattery Skanska, Inc. (18 Misc 3d 464 [Sup Ct, Queens County 2007]), wherein the court held that the statutory requirement of service upon all parties prior to production granted statutory standing to the parties to the action to challenge the subpoena duces tecum. Hyatt further contends that he has a proprietary interest in the subpoenaed documents. In support of this contention Hyatt relies on Dellwood Foods v Abrams (109 Misc 2d 263 [Sup Ct, Bronx County 1981], affd 84 AD2d 692 [1981], appeal dismissed 55 NY2d 1036 [1982]). In Dellwood Foods, the court determined that the corporate movant, which had been indicted for restraint of trade and competition, had standing on a number of grounds to quash postindictment subpoenas issued to movant’s sales personnel. The Dellwood Foods court determined, inter alia, that movant had standing as a “party affected” noting that CPLR 2304 permits a party to move to quash a subpoena served on a nonparty. The Dellwood Foods court also held that movant had a “[p]rotectable interest” in preventing government agents from exceeding their statutory authority since its sales personnel would have no interest in protecting movant from abuse of process.
Contrary to the contention of the FTB, Hyatt has demonstrated that he has standing to seek an order quashing the *509 subject subpoenas. As a party to the administrative tax appeals for which the discovery is sought by the FTB, Hyatt has statutory standing under CPLR 2304. Moreover, Hyatt has demonstrated that he has a proprietary interest in certain confidential information contained in documents in U.S. Philips’ possession regarding the prosecution and defense of his patents. In his affidavit, Hyatt avers that when he assisted U.S. Philips’ in-house counsel prosecute his patent applications, which were subject to the 1991 agreement, and defend the patent interference proceeding against a patent licensed to U.S. Philips, he provided confidential technical and patent information.
Authority of the FTB to Serve the Subpoenas
Hyatt contends the FTB had no authority to issue the subject subpoenas. Hyatt specifically contends that the subpoenas seeking the depositions should be quashed since the FTB did not seek leave in the underlying administrative tax action to obtain further discovery after the expiration of the June 30, 2011 deadline to make submissions to the Equalization Board. Hyatt asserts that once he commenced his administrative tax appeal, the FTB needed permission of the SBE before whom the appeals are pending since only the SBE has the authority to issue subpoenas in an appeal under its rules. Hyatt further asserts that California Revenue and Taxation Code § 19504 (d) only grants the FTB the power to subpoena during audits or protest proceedings as part of its investigation, and not on appeal. Section 21024 of the California Revenue and Taxation Code, Hyatt further contends, limits the FTB’s further investigations. Finally, Hyatt contends that the issuance of a “Final Notice” by the FTB ended the investigative period and its authority to issue subpoenas.
The FTB, however, contends that it is an independent state agency with independent statutory subpoena power. Contrary to Hyatt’s interpretation of section 19504 (d) of the California Revenue and Taxation Code, the FTB contends that the statute grants it broad subpoena power throughout the administrative process outlined in section 19001 et seq. of the Cahfornia Revenue and Taxation Code, which sets forth the procedures relating to California personal income taxes, including appeals before the SBE. The subpoena power, the FTB asserts, includes the power to demand depositions, as well as the production of documents, in administering its statutory duties. Moreover, the FTB contends that the subpoena power of the FTB and the SBE are not mutually exclusive. Accordingly, the FTB asserts that Hyatt *510 improperly concluded that the FTB no longer has subpoena powers when an appeal is pending before the SBE since the rules of the SBE grant it the power to issue subpoenas. Rather, the FTB contends, the subpoena powers of the FTB and the SBE exist in tandem. The FTB notes that Hyatt has failed to submit any statutory authority or case law for the argument that the SBE’s subpoena authority supplants the FTB’s statutory subpoena power. California Revenue and Taxation Code § 21024, the FTB asserts, has nothing to do with its subpoena power. Rather, the FTB asserts that section 21024 only shifts the burden of proof on appeal to the FTB in certain limited circumstances, including where the FTB has relied upon information from third parties and where the taxpayer has fully cooperated with the FTB during its audit.
A review of California Revenue and Tax Code § 19504 demonstrates that it grants the FTB broad subpoena power “for the purpose of administering its duties,” which includes determining and collecting income tax. Notably, this section of the code grants the FTB the power to demand “an entity of any kind” to malee available for examination documents relevant to collecting income tax (Cal Rev & Tax Code § 19504 [a]), and to depose “any other person having knowledge” (Cal Rev & Tax Code § 19504 [b]). Additionally, this section of the code provides that the FTB “may issue subpoenas or subpoenas duces tecum, which subpoenas must be signed by any member of the [FTB]
. . . , and may be served on any person for any purpose” (Cal Rev & Tax Code § 19504 [c] [1]). Notably there is no explicit limitation of the FTB’s subpoena power in this section of the code, and Hyatt does not contend that the rules of the SBE explicitly prohibit the FTB from issuing subpoenas during the pendency of the administrative tax appeal. Further, although it is uncontradicted that the SBE rules provide for a limited time for submissions of briefings, Hyatt does not challenge the FTB’s contention that the SBE rules provide for the admission of evidence up to 14 days before the hearing.
Additionally, Hyatt improperly relies upon section 21024 of the code since it cannot be construed as limiting the FTB’s subpoena power under the circumstances present in this matter. Section 21024 of the code provides that the FTB shall have the burden of producing reasonable and probative information on an administrative tax appeal concerning the amount of tax assessed under limited circumstances. Nothing in the section limits the subpoena power of the FTB during the pendency of *511 the appeal. Hyatt’s “Final Notice” argument is also without merit (Cal Rev & Tax Code § 19045 [a]).
Accordingly, to the extent that the defense of Hyatt’s administrative tax appeal is in the furtherance of FTB’s duties to collect income tax, this court finds that the FTB had the authority to issue the subject subpoenas under California Revenue and Taxation Code § 19504 (b).
Propriety of the Breadth of the Subpoenas
Hyatt contends that the subpoenas should be quashed as an improper fishing expedition since they seek information beyond the scope of the pending administrative tax appeals. As to the subpoenas duces tecum, Hyatt contends that the subpoenas are overbroad since they are not limited in time or scope. Hyatt further contends that they are overbroad since they seek “all” documents relating to certain topics. Hyatt contends that the information and materials sought have no relevance to the issue of when he became a resident of Nevada. To the extent that the FTB has argued that U.S. Philips’ licensing of his patents may provide an alternative tax basis under the “sourcing” theory, Hyatt asserts that any discovery should be limited to the tax years of 1991 and 1992 since he has never received any notice of audit for any other year.
Hyatt avers in his affidavit that he has been participating in a review of the 39 boxes of documents which U.S. Philips intends to produce to the FTB to identify the documents subject to the privilege. Hyatt asserts that, to date, he has identified documents which concern matters such as: details of pending patent applications which are maintained in confidentiality by the Patent Office; requests by U.S. Philips for confidential technical and patent information and his responses; requests by Philips that he review draft license agreements and draft correspondence; and requests by U.S. Philips that he show how his patent claims are supported and how certain products infringe on the patent claims.
Alternatively, Hyatt seeks a protective order limiting the scope of the respective depositions and production of documents demanded by the subpoenas to the issues in the underlying administrative proceedings and to the years 1991 and 1992. Therefore, Hyatt seeks a protective order limiting the scope of the document production to material information and to the years 1991 and 1992. Hyatt specifically notes that the patent interference proceeding for which the FTB seeks “all” documents occurred in the mid-1990s, well after the 1991 and 1992 *512 audit years, and is unrelated to the issues of his residency and income in 1991 and 1992.
In its opposition papers, the FTB contends that the subpoenaed documents are relevant to Hyatt’s source of income and residency, which are issues in the administrative tax appeals. Further, the FTB asserts that the documents as to the following issues are relevant: nature of Hyatt’s licensing business; the role of Hyatt and U.S. Philips in the licensing business; where the business activity was located; where the participants in the business were located; how payments were distributed; and communications involving solicitation of affidavits recently submitted to the SBE by Hyatt. The FTB asserts it can tax income if its “source” was California. The FTB also contends that it “routinely” seeks information for years prior to and subsequent to audit years to analyze a case. To determine the source of Hyatt’s income, the FTB asserts it requires an understanding of Hyatt’s relationship with U.S. Philips.
During oral argument, the FTB made the general argument that the subpoenas were not overbroad and that all of the documents related to the issues in the pending administrative tax appeals. The FTB, however, did not specifically address the fact that the subpoenas were not limited in time or in scope. Robert W. Dunn, counsel to the FTB, stated that the discovery was necessary because of the agreements executed by Hyatt and U.S. Philips were structured requiring a series of payments over a number of years.
On a motion to quash a subpoena, the movant has the burden of demonstrating the subpoena lacks relevancy or factual basis (Matter of Hogan v Cuomo, 67 AD3d 1144, 1145 [3d Dept 2009]). The issuer of the subpoena must then establish the relevancy of the material sought (Matter of Future Tech. Assoc. LLC v Special Commr. of Investigation for the N.Y. City School Dist., 31 Misc 3d 1206[A], 2011 NY Slip Op 50509[U] [Sup Ct, NY County 2011]). It is not enough that the issuer “hopes or suspects that relevant information will develop” (Matter of Morganthau, 73 AD3d 415, 419 [1st Dept 2010]).
Here, Hyatt has demonstrated that the subpoenas duces tecum seek material which is irrelevant to the issues in the administrative tax appeals, namely his residency and income in 1991 and 1992. Notably, at oral argument, this court questioned the FTB as to the relevancy of the prosecution of Hyatt’s patent applications and the patent interference proceeding, and the FTB failed to provide a direct response. Moreover, the FTB *513 failed to establish a factual basis for the relevance of material created prior to or subsequent to the audit years of 1991 and 1992. The conclusory assertions of William Dunn at oral argument that the FTB needs the materials to establish the relationship between U.S. Philips and Hyatt, without more, failed to demonstrate the relevancy of the materials created prior to and subsequent to the audit years. Similarly, Mr. Dunn’s assertion in his affidavit that the FTB “routinely” seeks information for years prior to and subsequent to the audit years in order to analyze the case was an insufficient explanation to establish the relevancy of the material. To the extent that Mr. Dunn, at oral argument, asserted that the material for the years outside the audit years was relevant insofar as the agreements between U.S. Philips and Hyatt contained structured payments over the years, the FTB failed to offer any explanation as to how income earned in a year other than the audit years would be attributable to the audit years.
Hyatt, however, has failed to demonstrate that the material regarding his residency or U.S. Philips’ licensing of his patents for its own use and to other companies during 1991 and 1992 was irrelevant to the issues in the administrative tax appeals.
Therefore, insofar as the FTB has failed to meet its burden of demonstrating the relevancy of the materials sought in the subpoenas duces tecum for the years other than 1991 and 1992, and the relevancy of the materials regarding the prosecution of Hyatt’s patents and the patent interference proceeding, Hyatt is entitled to a modification of the subpoenas duces tecum. Accordingly, the demands of the subpoenas duces tecum shall be limited to material related to tax years 1991 and 1992 with respect to the issues of Hyatt’s residency and income received in those years, his relationship with U.S. Philips, and the licensing of his patents and any revenue therefrom in 1991 and 1992. The demands seeking materials relating to the prosecution of Hyatt’s patents and the patent interference proceeding are stricken.
In view of the foregoing, the depositions of the nonparties upon whom the FTB served the subject subpoenas shall be limited to the issues of Hyatt’s residency in 1991 and 1992, his relationship to U.S. Philips, and the licensing of his patents and any revenue generated from the licensing of his patents in 1991 and 1992.
Common Interest Privilege
Hyatt contends that he and U.S. Philips share a common interest privilege over certain matters encompassed by the *514 subpoenas. Hyatt also seeks a protective order allowing him to inspect documents U.S. Philips intends to produce to prevent privileged documents from being disclosed. Finally, Hyatt seeks a confidentiality order. Hyatt contends that Nevada law, not New York law, applies to the issue of common interest privilege. Therefore, Hyatt asserts that he needs only to demonstrate that legal services were provided to him by U.S. Philips’ counsel for the common interest privilege to attach to the subpoenaed documents.
In support of his motion, Hyatt avers that he had a common interest with U.S. Philips regarding licensing the patents, defending a patent “interference” proceeding, and prosecuting patent applications for patents which were also included in the 1991 agreement. Specifically, Hyatt avers that, in the mid-1990s, he assisted U.S. Philips’ in-house counsel defend a “patent interference” proceeding commenced with respect to one of his patents licensed to U.S. Philips pursuant to the 1991 agreement. He asserts that the defense of the patent interference proceeding involved his secret technical and patent knowledge regarding the patent, which he understood was privileged. Hyatt also avers that he understood his communications with counsel for U.S. Philips were privileged under the attorney-client privilege or the common interest privilege. Accordingly, Hyatt contends that all communications with U.S. Philips counsel were privileged, as he was assured by counsel for U.S. Philips.
As noted earlier, Hyatt further asserts that he has been participating in a review of the 39 boxes of documents which U.S. Philips intends to produce to the FTB to identify the documents subject to the privilege. Hyatt avers that, to date, he has identified documents which concern matters subject to the common interest privilege, including details of pending patent applications which are maintained in confidentiality by the Patent Office, requests by U.S. Philips for confidential technical and patent information and his responses, requests by Philips that he review draft license agreements and draft correspondence, and requests by U.S. Philips that he show how his patent claims are supported and how certain products infringe on the patent claims.
As to Jack Haken and Algy Tamoshunas, Hyatt avers that they were U.S. Philips’ in-house counsel, who represented U.S. Philips in its licensing program and to whom he provided confidential knowledge concerning his patents in order to support the licensing program and defend the patent interference *515 proceeding. Hyatt further avers that documents he provided to U.S. Philips were also shared with outside counsel for U.S. Philips, and that he was informed that the documents would be protected as attorney-client privileged documents. Hyatt also attended meetings with U.S. Philips’ counsel to discuss strategy meetings regarding the licensing program and they provided him with documents he considered confidential and privileged. Hyatt contends all of these documents and information are subject to the attorney-client privilege.
The FTB contends that New York law applies to the privilege issue since the documents were created in New York and deposition are to take place in New York.[5] Under New York law, the FTB asserts, the common interest privilege applies only to attorney-client communications shared with other counsel in joint preparation for litigation or in anticipation of litigation. The FTB argues that Hyatt cannot establish an attorney-client relationship with U.S. Philips or U.S. Philips’ in-house counsel, Mr. Haken and Mr. Tamoshunas, who are also subjects of subpoenas. The FTB submits the affidavit from U.S. Philips’ outside counsel that no attorney-client relationship existed.
Initially, the court finds that New York law, not Nevada law, is applicable in the present matter to the issue of whether a common interest privilege attached to the subpoenaed documents in U.S. Philips’ possession. CPLR 3119 provides that a motion to quash a subpoena served pursuant to the statute is subject to the rules and statutes of New York (CPLR 3119 [e]). Moreover, insofar as the subpoenas seek documents located in New York and seek to take depositions in New York regarding, inter alia, the licensing of Hyatt’s patents by U.S. Philips, a New York company, New York has a greater interest and relationship to the discovery issue (see First Interstate Credit Alliance v Andersen & Co., 150 AD2d 291, 293 [1st Dept 1989]; cf. Lego v Stratos Lightwave, Inc., 224 FRD 576 [SD NY 2004]).
Under New York law, the burden of establishing that certain documents are privileged and protected from discovery is on the party asserting the privilege, and the protection claimed must be narrowly construed (Spectrum Sys. Intl. Corp. v Chemical *516 Bank, 78 NY2d 371, 377 [1991]; 148 Magnolia, LLC v Merrimack Mut. Fire Ins. Co., 62 AD3d 486, 487 [1st Dept 2009]). The burden cannot be satisfied by counsel’s conclusory assertions of privilege and competent evidence establishing the privilege must be set forth by the party asserting the privilege (Claverack Coop. Ins. Co. v Nielsen, 296 AD2d 789 [2002]; Agovino v Taco Bell 5083, 225 AD2d 569, 571 [2d Dept 1996]; Martino v Kalbacher, 225 AD2d 862 [3d Dept 1996]; Smith v Ford Found., 231 AD2d 456 [1st Dept 1996]).
For a document to be privileged as an attorney-client communication pursuant to CPLR 4503 (a), the document must be primarily or predominantly a communication of a legal character, for the purpose of obtaining or rendering legal advice or services, and intended to be confidential (Spectrum Sys. Intl. Corp., 78 NY2d at 379; Rossi v Blue Cross & Blue Shield of Greater N.Y., 73 NY2d 588, 594 [1989]; People v Osorio, 75 NY2d 80, 84 [1989]). “No attorney-client privilege arises unless an attorney-client relationship has been established” (Sieger v Zak, 60 AD3d 661, 662 [2d Dept 2009]; see Matter of Priest v Hennessy, 51 NY2d 62, 68-69 [1980]). Communications between counsel and client which are shared with third parties are generally not privileged (People v Osorio, 75 NY2d at 84; People v Harris, 57 NY2d 335, 343 [1982]; Sieger v Zak, 60 AD3d 661, 662 [2009]).
The common interest privilege is an exception to the waiver of attorney-client privilege where information is shared with third parties (Liberman v Gelstein, 80 NY2d 429, 437 [1992]). In the absence of attorney-client privilege, the common interest exception cannot apply (Fewer v GFI Group Inc., 78 AD3d 412, 413 [1st Dept 2010]). Its application is limited to communications between counsel and parties with respect to legal advice in pending or reasonably anticipated litigation in which the joint consulting parties have a common legal interest (id.). It does not protect business or personal communications (8 CarmodyWait 2d, Common Interest, or Joint Defense, Exception § 56:190). There must be a substantial showing by the party attempting to invoke the protections of the privilege of the need for a common defense as opposed to the mere existence of a common problem (id.).
In the present matter, Hyatt has not demonstrated the existence of an attorney-client relationship between himself and U.S. Philips’ counsel. His mere assertions that he believed that an attorney-client relationship existed and that his communications with U.S. Philips’ counsel were confidential are insuf *517 ficient to demonstrate the existence of such a relationship (SR Intl. Bus. Ins. Co. Ltd. v World Trade Ctr. Props. LLC, 2002 WL 1334821, *3 n 1, 2002 US Dist LEXIS 10919, *10 n 1 [SD NY 2002]). Moreover, in the context of U.S. Philips’ licensing Hyatt’s patents, it is uncontradicted that a business relationship existed. Therefore, no attorney-client privilege would attach to the communications with respect to the licensing program or the revenues generated from the licensing. Accordingly, Hyatt has failed to meet his burden of demonstrating that a privilege attached to the documents which this court has directed be produced under the subpoenas duces tecum. In the absence of an attorney-client relationship, no common interest privilege could attach to the documents.
In view of the foregoing, it is ordered that Hyatt’s motion is granted to the extent that the subpoenas duces tecum are modified such that all demands regarding the prosecution of Hyatt’s patents and the patent interference proceeding are stricken and the material relating to those topics shall not be produced; and it is further ordered that the motion is granted to the extent that the demands of the subpoenas duces tecum are limited to material relating to the 1991 and 1992 tax years with respect to the issues of Hyatt’s residency and income received in 1991 and 1992, his relationship to U.S. Philips, and the licensing of his patents and any revenue generated from the licensing of his patents in 1991 and 1992; and it is further ordered that the depositions of the nonparties upon whom the FTB served the subject subpoenas shall be limited to the issues of Hyatt’s residency and income received in 1991 and 1992, his relationship to U.S. Philips, and the licensing of his patents and any revenue generated from the licensing of his patents in 1991 and 1992; and it is further ordered that Hyatt’s motion for a confidentiality order is denied.

. Hyatt commenced a tort action in Nevada against the FTB alleging the FTB had engaged in questionable conduct in pursuing the taxes. The action was litigated and resulted in a $490 million judgment, including punitive damages, in favor of Hyatt. The FTB appealed the judgment and the appeal is pending.

. Exhibit A consists only of the subpoenas. The attachment referred to in the commission regarding the documents to be produced at the time of the deposition is not part of exhibit A.

. California Code Civil Procedure § 2026.010 (f) provides as follows:
“On request, the clerk of the court shall issue a commission authorizing the deposition in another state or place. The commission shall request that process issue in the place where the examination is to be held, requiring attendance and enforcing the obligations of the deponents to produce documents and answer questions. The commission shall be issued by the clerk to any party in any action pending in its venue without a noticed motion or court order. The commission may contain terms that are required by the foreign jurisdiction to initiate the process. If a court order is required by the foreign jurisdiction, an order for a commission may be obtained by ex parte application.”

. CPLR 3119 (a) (4) defines “subpoena” as “a document, however denominated, issued under authority of a court of record requiring a person to: (i) attend and give testimony at a deposition; (ii) produce and permit inspection and copying of . . . documents . . . ; or (iii) permit inspection of premises.”

. In support of its contention that New York law, not Nevada law, applies to the issue of common interest privilege, the FTB relies upon the order of the Nevada court in the action commenced by Hyatt against the FTB. Although the FTB contends that the Nevada court rejected Hyatt’s assertion of common interest privilege, the Nevada court in its written order did not address the common interest privilege.