Spicer v GardaWorld Consulting (UK) Ltd. (2020 NY Slip Op 01448)





Spicer v GardaWorld Consulting (UK) Ltd.


2020 NY Slip Op 01448


Decided on March 3, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 3, 2020

Acosta, P.J., Friedman, Mazzarelli, Webber, JJ.


655352/17 -11187A 11187 11186

[*1] Timothy Spicer, et al., Plaintiffs-Appellants,
v
GardaWorld Consulting (UK) Limited, Defendant-Respondent.
Timothy Simon Spicer, et al., Plaintiffs-Respondents,
v
GardaWorld Consulting (UK) Limited, Defendant-Appellant.


Chaffetz Lindsey, LLP, New York (Sanford M. Litvack of counsel), and Hogan Lovells US LLP, New York (David Wertheimer of counsel), for appellants/respondents.
Skadden, Arps Slate, Meagher & Flom, LLP, New York (Michael Richter and Scott D. Musoff of counsel), for GardaWorld Consulting (UK) Limited, respondent/appellant.



Order, Supreme Court, New York County (Andrew Borrok, J.), entered August 13, 2019, which, insofar as appealed from, granted defendant's motion to compel production of communications between plaintiffs' counsel and nonparty KippsDeSanto & Company, unanimously reversed, on the law and the facts, with costs, and the motion denied. Orders, Supreme Court, New York County (Charles E. Ramos, J.), entered August 23, 2018, which granted plaintiffs' motion for summary judgment on their declaratory judgment claim, and denied defendant's motion for summary judgment dismissing the complaint, unanimously affirmed, with costs.
Plaintiffs were the sole shareholders of Hestia B.V. (the Company) prior to selling all of their shares to defendant. Nonparty KippsDeSanto & Company (KDC) was plaintiffs' financial adviser in connection with the sale transaction.
The motion court should not have accepted defendant's blanket challenge to pre-closing communications between plaintiffs' counsel and KDC that were withheld as attorney-client privileged. Although, " [g]enerally, communications made in the presence of third parties ... are not privileged from disclosure' because they are not deemed confidential," statements made to the agents of the attorney or client "retain their confidential (and therefore, privileged) character, where the presence of such third parties is deemed necessary to enable the attorney-client communication and the client has a reasonable expectation of confidentiality" (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 624 [2016]). It is not dispositive for purposes of the agency exception that KDC did not have a fiduciary or formal agency relationship with plaintiffs (see People v Osorio, 75 NY2d 80, 84 [1989] ["The scope of the privilege is not defined by the third parties' employment or function, [but] depends on whether the client had a reasonable expectation of confidentiality under the circumstances"]).
It is true that KDC was not retained to assist plaintiffs' counsel in providing legal advice. However, the unrebutted evidence reflects that KDC spent some portion of its time helping counsel to understand various aspects of the transaction for that purpose. As such, KDC's [*2]presence was necessary to enable attorney-client communication (see MBIA Ins. Corp. v Countrywide Home Loans, Inc., 93 AD3d 574, 574 [1st Dept 2012]; Lehman Bros. Intl. [Europe] v AG Fin. Prods., Inc., 2016 NY Slip Op 30187[U], *9-15 [Sup Ct, NY County 2016]; United States v Kovel, 296 F2d 918, 922 [2d Cir 1961]; Urban Box Off. Network, Inc. v Interfase Mgrs., L.P., 2006 WL 1004472, *3, 2006 US Dist LEXIS 20648, *11 [SD NY Apr. 17, 2006]).
Plaintiffs also had a reasonable expectation that the confidentiality of communications between their counsel and KDC would be maintained. Plaintiffs' counsel attested that KDC promised to keep all such communications confidential. The governing Purchase and Sale Agreement also specified that all privileged documents related to the transaction would remain protected from disclosure to defendant even after closing (see Tekni-Plex, Inc. v Meyner & Landis, 89 NY2d 123, 138-139 [1996]; Askari v McDermott, Will & Emery, LLP, 179 AD3d 127, 149-150 [2d Dept 2019]).
Contrary to defendant's contention, the Cooperation Clause in KDC's engagement letter did not undermine the reasonableness of this expectation of confidentiality, as it only required "reasonabl[e]" assistance to the Company (now owned by defendant), and should thus not be read to require KDC to turn over privileged documents (see Gulf Ins. Co. v Transatlantic Reins. Co., 13 AD3d 278, 279-280 [1st Dept 2004]).
Thus, plaintiffs demonstrated that KDC's presence was deemed necessary to enable the attorney-client communication and that they had a reasonable expectation that the confidentiality of communications between their counsel and KDC would be maintained - at least as a general matter. Defendant is free to challenge specific documents on plaintiffs' privilege log.
Insofar as defendant's challenge to the withholding of post-closing communications between plaintiffs' counsel and KDC on attorney work product grounds is limited to challenging the reasonableness of the same expectation of confidentiality as discussed above, it is equally unavailing.
The sale of plaintiffs' shares to defendant was governed by a Purchase and Sale Agreement (PSA) that provided for a base purchase price plus two possible "earnout" payments to be calculated based on the Company's performance post-closing. The parties dispute the method of calculating the first earnout payment.
Defendant contends that PSA § 1.5(c)(ii) constitutes an express condition precedent barring any earnout payment where, as here, the Company did not record profits of at least $87 million by January 31, 2016. This interpretation is in conflict with the plain meaning of the provision. In fact, § 1.5(c)(ii) provides that no earnout payment shall be due if the Company does not record profits of at least $87 million during the "First Earnout Period" - a defined term that is "automatically extended" beyond January 31st where (as here) profits did not equal or exceed $95 million by that date.
Defendant also contends that the provisions of the PSA detailing how to measure profits during any extended earnout period are ambiguous insofar as they specify the end dates but not the start dates thereof. In fact, it is clear in context that only one start date is indicated because that date is meant to continue to apply - resulting in an initial 12-month period and an "extended" (i.e., lengthened or prolonged) 13- to 16- month period.
To the extent the parties make arguments based on their course of conduct, the arguments [*3]are not properly considered, because the PSA is unambiguous (see W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). We have considered defendant's remaining textual arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 3, 2020
CLERK