OPINION OF THE COURT
Robert Roberto, Jr., J.
The motion of all defendants, except Neal Smith, M.D., and cross motion of defendant Smith to quash subpoenas duces tecum dated February 14, 1997 are decided as follows:
The subpoenas at issue were served by plaintiff Ralph Parisi, M.D., on Jacob Steiner, Esq., defendant John J. Leppard’s former attorney, and on Richard Weiss, Esq., defendant Smith’s attorney. Although they are not the attorneys of record in the present litigation, both Mr. Steiner and Mr. Weiss were involved in the events that led to the suit. The action is founded on the alleged wrongful acts of the defendants in the breakup of one medical practice in which Dr. Parisi and Dr. Leppard were equal owners, Plainview Orthopedics & Sports Associates, P. C. (POSA), and the founding of another, competing practice by Dr. Leppard and Dr. Smith, Orthopedic & Sports Associates of Long Island, P. C. (OSALI).
Initially, the court finds that Mr. Steiner was Dr. Leppard’s attorney, and never represented both Dr. Parisi and Dr. Leppard, or POSA, with regard to any matter in which Dr. Parisi did not also have his own attorney. This is borne out by Mr. Steiner’s affirmation on this motion denying such joint representation, in which he also names a series of other attorneys who represented Dr. Parisi’s interests. A similar affirmation was submitted on a prior motion to disqualify him as counsel, which is annexed as an exhibit here. It is undisputed that the disqualification motion was withdrawn by Dr. Parisi, and this fact, as well as the failure of Dr. Parisi to submit or refer to any retainer statement regarding Mr. Steiner’s representation of either him or POSA, supports Mr. Steiner’s denials. Certain *953 bills for services rendered by Mr. Steiner, which on their face seem to indicate that at one time he did represent the present antagonists jointly, have been satisfactorily explained; Dr. Parisi and Dr. Leppard had their legal bills paid by POSA so that each could reap certain tax benefits.
Accordingly, Mr. Steiner may not be required to answer questions at a deposition or to produce documents concerning legal advice he gave to Dr. Leppard, or communications he received from Dr. Leppard that were in the context of such counsel, even if such exchanges concerned matters that were of contemporaneous interest to Dr. Parisi and POSA. (CPLR 4503 [a]; 3101 [b]; Matter of Vanderbilt [Rosner — Hickey], 57 NY2d 66.)
Mr. Steiner may not, however, simply refuse to appear at a deposition or object to each and every question asked, or refuse to produce any subpoenaed document, simply because he represented Dr. Leppard. It is apparent that certain documents called for in the subpoena may contain facts relevant to this action which do not call on him to reveal the contents of counsel he gave or communications he received from his client, and are not otherwise privileged.
The specific document requests are discussed immediately below and again after an evaluation of the subpoena served on Mr. Weiss.
Bills to POSA must be produced (item 1 of the exhibit annexed to the subpoena) although not the time records (item 2), which could serve to identify the actual work done for Dr. Leppard. (De La Roche v De La Roche, 209 AD2d 157.) The same direction applies to items 6 and 7, bills and time records, respectively, concerning OSALI. The subpoena must be obeyed regarding correspondence about POSA that was received from or given to third parties (excepting, possibly, Dr. Smith, as discussed below; item 3). The same is directed regarding any agreements or draft agreements that were given to third parties to review (item 4). The subpoena must also be obeyed with regard to retainer agreements and payments made to Mr. Steiner (items 9, 13). (Oppenheimer v Oscar Shoes, 111 AD2d 28.) A response must be made to item 12 to the extent that documents or correspondence were to or from third parties, as well as to items 15 and 16 regarding exchanges with the accounting firm.
The court finds items 5 (1) and 8 to be inappropriate for production, as on their face they seek information that would necessarily involve disclosure of confidential communications be *954 tween lawyer and client, or would represent Mr. Steiner’s work product. (CPLR 3101 [c]; see, Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371.)
However, to the extent that the privilege was waived by Dr. Leppard concerning any given document by dint of its being shown or sent to a third party, the same should be disclosed, excepting, again, those instances where the third party was Dr. Smith.
There is no issue of joint representation regarding Mr. Weiss, who represents Dr. Smith, and Mr. Weiss may therefore raise the privilege with regard to questions he may be asked at a deposition, or in response to the documents demanded if a response would require violating attorney-client confidences. As with Mr. Steiner, however, there can be no flat refusal to appear for a deposition or to respond to document requests.
As far as the specific documents demanded of Mr. Weiss are concerned, the same principles that guide resolution of the subpoena served on Mr. Steiner apply. Accordingly, "bare” bills, payment statements and retainer agreements must be provided (items 1, 3, 4) but not the time records (item 2); items 5 and 8 are privileged or are shielded as attorney work product; and notwithstanding the foregoing, any document that was given or shown to, or originated by, a third party must be produced.
The court now turns to items 5 (2), 10, 11 and 14 of the subpoena served on Mr. Steiner, and items 6, 7, 9 and 10 of the one served on Mr. Weiss, as they concern the relationship of Dr. Leppard and Dr. Smith.
Generally speaking, these items seek information regarding four-way meetings held between Mr. Weiss and his client and Mr. Steiner and his client, as well as documents that may reveal other communications that flowed between them regarding not only POSA and Dr. Parisi, but also the competing medical practice, OSALI. The court therefore must decide a question that apparently has not been addressed squarely by the New York State courts. This is whether the so-called "joint defense” or "common interest” extension of the attorney-client privilege applies in a civil case, and thus may serve to ground an assertion of this privilege in the present action. The privilege would otherwise not exist in the case of joint meetings or document exchanges, because the communication between lawyer and client took place in the known presence of a third party. (People v Harris, 57 NY2d 335, 343; People v Borcsok, 107 AD2d 42; see also, Prince, Richardson on Evidence § 5-204 [Farrell 11th ed], and cases cited.)
*955 Assuming that the privilege may be asserted under these circumstances, the next question to be answered is the scope of the privilege, i.e., which types of joint communications made in this particular case should be shielded from disclosure, and which not.
The so-called "joint defense” or "common interest” extension to the attorney-client privilege has been recognized by Federal courts in both criminal and civil cases, and by New York State courts in criminal matters. (United States v Schwimmer, 892 F2d 237, 243-244; Eisenberg v Gagnon, 766 F2d 770, 787-788, cert denied sub nom. Wassertrom v Eisenberg, 474 US 946; In re Megan-Racine Assocs., 189 Bankr 562, 571; People v Osorio, 75 NY2d 80; People v Pennachio, 167 Misc 2d 114.) As expressed by New York courts in the criminal arena, this extension is based on the notion that a defendant and his counsel may expect that confidences will be kept in a joint meeting with a codefendant and the latter’s attorney — if the purpose of the meeting is to share information in furtherance of a common defense. (People v Osorio, supra, at 85; People v Pennachio, supra.) However, if the meeting is for some other purpose, the presence of a codefendant or his counsel destroys the expectation of confidentiality and the privilege does not exist. (People v Osorio, supra.)
The Court holds that the foregoing variation of the privilege may be applied in this civil case. The purpose underlying the attorney-client privilege itself — and no distinction is made between civil and criminal cases — is to foster the open dialogue that is essential to effective representation (Spectrum Sys. Intl. Corp. v Chemical Bank, supra, at 377). The statute embodying the privilege is a codification of this long-standing principle of common law. (Supra.) It is found in the Civil Practice Law and Rules (CPLR 4503), and the Legislature obviously has never felt the need for a separate statement in the Criminal Procedure Law. In short, the purpose underlying the privilege remains constant, even if the legal context varies. Therefore, unless there is some logical or policy reason not to extend developments regarding the privilege in the criminal area to the civil, and vice versa, it should be done. The court cannot find any such impediment here and will permit the movants and cross movants to assert the privilege.
However, because the motion and cross motion seek to quash the subpoenas in their entirety, the scope of the privilege must also be determined.
On its face, this joint defense/common interest privilege appears to be considerably narrower than the original concept *956 from which it springs. While the attorney-client privilege applies to all communications between client and lawyer when legal advice is sought — whether or not litigation is ongoing or even contemplated (Spectrum Sys. Intl. Corp. v Chemical Bank, supra, at 380) — the joint defense/common interest extension, as described by the Court of Appeals in Osario (supra), does not cover a multiparty meeting where the subject is anything other than a common defense in a pending case. In the present case there was no action pending when several of these joint communications took place.
This does not end the analysis, however, because the Court of Appeals had no reason to address the scope of the privilege in any context other than the one before it, i.e., a pending criminal matter. For that reason, it is not possible to say that communications shared in a joint meeting can never be privileged if they do not have to do with existing civil litigation. (Cf., Spectrum Sys. Intl. Corp. v Chemical Bank, supra.) Certainly, Federal courts have indicated that commencement of an action is not an absolute prerequisite. (See, United States v Schwimmer, supra; In re Megan-Racine Assocs., supra.)
This court concludes that the privilege serves its purpose when parties who are concerned with potential litigation, as well as those who are already involved in a lawsuit, may attend a strategy session with their respective attorneys without fear that the full contents of the meeting will later be available to a potential adversary. Accordingly, the court holds that provided the exchanges sought to be shielded were made in contemplation of legal action by or against Dr. Parisi and/or POSA, they are privileged.
A proper assertion of the privilege in a given instance therefore will rest on whether the exchange was for the purpose of giving and receiving shared legal counsel in or in anticipation of litigation, as opposed to transmitting information that was business-oriented or personal in nature. (See, Rossi v Blue Cross & Blue Shield, 73 NY2d 588, 593.) The distinction between the two is particularly important here because although the record suggests that the Smith-Leppard meetings that took place between January 1992 and July 1993 may have been concerned with Dr. Parisi, POSA and the possibility of litigation (which began in or about Sept. 1993), it also suggests that they simply may have been negotiating with one another or discussing business issues regarding the new practice they were setting up together. The former may ground assertion of the privilege; the latter may not.
*957 Because this is a fact-specific inquiry (Rossi v Blue Cross & Blue Shield, supra), it cannot be resolved in a vacuum; a blanket prohibition against deposing counsel, or obtaining documents, concerning the joint meetings or other communications between them therefore would be inappropriate. In sum, questions or document requests that address communications between Dr. Smith and Dr. Leppard regarding negotiations between them or other business matters must be answered; those that touch on OSALI’s and/or its principals’ relationship to POSA and to Dr. Parisi may be objected to if a response would require revealing communications that are privileged under the foregoing analysis.
Those documents that are questionable under the terms of this order are to be submitted to the court for in camera review within 30 days of the service of a copy of this order, with notice of entry.
Finally, the court agrees with movants that if plaintiff wishes to depose witnesses and seeks more than simple production of documents, a subpoena, and not a subpoena duces tecum is the correct vehicle. Therefore, a subpoena should be served on any nonparty witness whose testimony is to be taken. (CPLR 3106 [b]; Fryhergh v Kouffman, 119 AD2d 541.) Notice of the date and time of the deposition should be served on all counsel.