**BANK OF AMERICA, N.A., et al., Plaintiffs,**

v.

**TERRA NOVA INSURANCE COMPANY LIMITED, Defendant.**

**No. 01 CIV.0646(LMM)GWG.**

United States District Court, S.D. New York.

July 18, 2002.

John M. Aerni, LeBoeuf, Lamb, Greene & MacRae, L.L.P., New York City, for Defendant Terra Nova Insurance Company Limited.

Adam K. Hollander, Mayer, Brown, Rowe & Maw, Chicago, IL, for Plaintiff Bank of America, N.A.

Thomas H. Golden, Willkie Farr & Gallagher, New York City, for General Star Indemnity Co.

## OPINION AND ORDER

GORENSTEIN, United States Magistrate Judge.

Terra Nova Insurance Company Limited ("Terra Nova") seeks an order compelling disclosure of certain documents that Bank of America, N.A. (the "Bank") has withheld from discovery as privileged. For the reasons stated below, the motion is granted.

## BACKGROUND

### The 1999 Reinsurance Contracts and Letter of Credit Agreements

In 1999, Palladium Insurance Limited and some of its affiliates, including Platinum Indemnity Limited, (collectively, "Palladium") entered into a series of weather derivative contracts with various third parties under which Palladium accepted certain weather related risks at locations throughout the United States. In connection with these contracts, the Bank entered into letter of credit agreements with Palladium pursuant to which the Bank extended letters of credit for Palladium's account.

In the letter of credit transactions between the Bank and Palladium, the Bank was represented by the law firm of Winston & Strawn. Palladium was represented by the firm of Conyers, Dill & Pearman. Pursuant to the letter of credit agreements, the Bank issued letters of credit for Palladium's account. Also pursuant to these agreements, Palladium purported to procure reinsurance policies from Terra Nova and other insurance companies in order to provide security for the Bank's potential obligations on draws that might occur under the letters of credit. Under these reinsurance policies, Terra Nova and the other companies had to indemnify the Bank and Palladium for any payments they were required to make in connection with the underlying weather derivative contracts.

Ultimately, payments were required to be made to the third parties under the weather derivative contracts and thus under the reinsurance policies as well. The dispute in these cases centers on the authority of the individual who allegedly acted as the agent of Terra Nova (and the other insurance companies) in issuing the reinsurance policies: Harold Mollin of the

Customized Worldwide Weather Insurance Agency, Inc. Terra Nova alleges that Mollin acted without authority in purporting to bind Terra Nova to the reinsurance policies and that the policies are therefore invalid. The Bank asserts that the insurance policies are binding. Mollin has since fled the country.

*The Subpoenas At Issue*

On March 17, 2002, Terra Nova served Loren Weil of Winston & Strawn, the Bank's counsel in its dealings with Palladium, with a subpoena duces tecum requiring him to testify and produce documents concerning the 1999 letter of credit agreements between the Bank and Palladium. In response, the Bank provided Terra Nova with documents to which it has asserted no privilege and also provided Terra Nova with a privilege log identifying a number of communications between Weil and Palladium in 1999 that the Bank claims to be privileged under the "common interest" doctrine. *See* Privilege Log, reproduced as Exhibit B to Letter from John M. Aerni, dated May 17, 2002 ("May 17 Letter"), at 1. Terra Nova seeks to compel production of these documents (hereinafter, the "Disputed Documents") on the ground that the relationship between Weil and Palladium was not one of attorney and client but merely "debtor and creditor" and that therefore the common interest doctrine does not apply.

*DISCUSSION*

*Applicable Choice of Law*

At the outset, the parties disagree as to which law of privilege applies to this case. The Bank claims that the Court should apply the federal law of privilege, while General Star Indemnity Company ("General Star")—an insurance company in a related case that seeks similar documents from the Bank—argues that New York law should apply. Rule 501 of the Federal Rules of Evidence provides that although federal common law generally governs federal court proceedings, "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege . . . shall be determined in accordance with State law."

The Bank argues that because subject matter jurisdiction is based on the Edge Act, 12 U.S.C. § 632, the federal law of privilege applies. General Star argues that while the Edge Act provides federal jurisdiction for claims involving international or foreign banking, it does not provide a rule of decision but merely acts as a "pass-through to state law principles." *Lloyds Bank PLC v. Republic of Ecuador*, 1998 WL 118170, at *6 (S.D.N.Y. March 16, 1998) (citing *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12 (2d Cir.1996)); *see also A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454 (D.C.Cir.1995) (applying District of Columbia's choice of law rules in action arising under the Edge Act). Thus, General Star argues that the Edge Act, for purposes of privilege law, is the equivalent of diversity jurisdiction under 28 U.S.C. § 1332 because it merely offers access to the federal courts without providing the substantive law for disposition of the claims.

The Court need not reach this issue because, as described below, the result is the same under either body of law. Indeed, "New York law governing the attorney-client privilege is generally similar to accepted federal doctrine." *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y.1993); *accord Josephson v. Marshall*, 2001 WL 815517, at *2 (S.D.N.Y. July 19, 2001). Because federal case law is much more comprehensive with respect to the particular issue raised by the parties—the application of the common interest doctrine to the attorney-

client privilege—the Court will address the issue first under federal law.

### Privilege Law Generally

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law," *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). However, " 'privileges are neither lightly created nor expansively construed.' " Instead, they are recognized " 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.' " *In re Grand Jury Subpoenas Dated January 20, 1998*, 995 F.Supp. 332, 334 (E.D.N.Y.1998) (citations omitted); *accord United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999) ("[p]rivileges should be narrowly construed and expansions cautiously extended"); *In re Horowitz*, 482 F.2d 72, 81 (2d Cir.) (the attorney-client privilege "stands in derogation of the public's 'right to every man's evidence,' . . . 'it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle' ") (citations omitted), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *Josephson v. Marshall*, 2001 WL 815517, at *2 ("the privilege 'must be narrowly construed to provide no broader protection than is necessary to accomplish its purpose given that its invocation constitutes an obstacle to the truth-finding process' ") (citation omitted). The proponent of the privilege bears the burden of establishing its existence. *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir.1997); *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987).

### The Common Interest Doctrine Under Federal Law

The doctrine under which the Bank claims attorney-client privilege for the Disputed Documents—known as the "common interest" doctrine or "joint defense" privilege—is an exception to the general rule that the attorney-client privilege is waived when a protected communication is disclosed to a third party. The doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989). Thus, the doctrine "applies where parties are represented by separate counsel but engaged in a common legal enterprise." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y.1995). "The key consideration is that the nature of the [parties' common] interest be identical, not similar, and be legal, not solely commercial." *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC*, 2002 WL 1334821, at *3 (S.D.N.Y. June 19, 2002) (quoting *North River Ins. Co. v. Columbia Cas. Co.*, 1995 WL 5792, at *3 (S.D.N.Y. Jan. 5, 1995)); *Bank Brussels Lambert*, 160 F.R.D. at 447. In addition, some cases suggest the doctrine only applies to communications made with respect to actual or reasonably likely litigation. *See, e.g., In re Santa Fe Int'l Corp.*, 272 F.3d 705, 711 (5th Cir. 2001) ("there must be a palpable threat of litigation" not a mere possibility for the doctrine to apply); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 50 (S.D.N.Y. 1989) ("[a]ctual or potential litigation is a

necessary prerequisite for application of the joint defense privilege").

■ The Bank states that the Disputed Documents involve "communications with Palladium and/or its counsel with respect to the structuring and effectuation of the letter of credit agreement and the supporting reinsurance ·policies." Letter from Adam K. Hollander, dated May 28, 2002 at 1. Thus, according to the Bank, the "common interest" the Bank shared with Palladium was "structuring and effectuating a credit agreement that was appropriately supported by reinsurance policies."

Accepting the Bank's characterization of the interest it shared with Palladium, its argument that the common interest doctrine applies must be rejected. First, in structuring the credit agreement, the parties' interests were not identical; the Bank was issuing letters of credit on behalf of its debtor, Palladium. While the Bank explains that there was a "collaborative effort" to structure a deal, such an effort is present in many negotiated commercial transactions. The mere fact that the parties were working together to achieve a commercial goal cannot by itself result in an identity of interest between the parties. *See, e.g., SR Int'l Bus. Ins. Co. Ltd.,* 2002 WL 1334821, at *3 ("sharing a desire to succeed in an action does not create ·a 'common interest' ") .(quoting *Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 893 (S.D.N.Y.1999)). Here, each party had an interest in making the terms of the transaction as favorable as possible to itself.

The Bank points out that Palladium paid the Bank's attorneys' fees in connection with the negotiation of the letter of credit agreement, arguing that this demonstrates an identity of interest. But this payment resulted only because the Bank required it as part of the letter of credit agreements. Indeed, it is common for lenders to require borrowers to pay the lenders' attorneys' fees without there being some identity of interest between these parties. If anything, the fact that the Bank could require Palladium to pay the Bank's fees provides further evidence of the divergence of interests between the parties. Because the interests of the parties were not identical, the common interest doctrine does not apply. *See SR Int'l Bus. Ins. Co. Ltd.,* 2002 WL 1334821, at *3 ("the nature of the interest [must] be identical, not similar") (quoting *North River Ins. Co.,* 1995 WL 5792, at *3).

Second, the Bank has supplied no evidence that the letter of credit agreements constituted anything more than a business transaction—that is, a commercial endeavor. The existence of a "legal"—rather than a commercial—venture, however, is a critical component of the common interest doctrine. *SR Int'l Bus. Ins. Co. Ltd.,* 2002 WL 1334821, at *3 (quoting *North River Ins. Co.,* 1995 WL 5792, at *3). Here, the only apparent "legal" aspect to the venture was a desire that the transaction be legally appropriate.

It is of no moment that the parties may have been developing a business deal that included as a component the desire to avoid litigation. As noted in *Walsh v. Northrop Grumman Corp.,* 165 F.R.D. 16 (E.D.N.Y.1996), such a desire "does not transform their common interest and enterprise into a legal, as opposed to commercial, matter." *Id.* at 19. Tellingly, there is no evidence of any concern in 1999 regarding litigation; the dispute regarding the reinsurance policies came to light only in 2000. Even if there had been a concern about potential litigation in 1999, the common interest doctrine "does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Bank Brussels Lambert,* 160 F.R.D. at 447; *accord In re FTC,* 2001

WL 396522, at *5 (S.D.N.Y. April 19, 2001) ("a business strategy which happens to include a concern about litigation is not a ground for invoking the common interest rule").

The lack of a common interest is further highlighted by the actual "Common Interest/Joint Prosecution and Defense Agreement" that was ultimately executed by the Bank and Palladium. The document is undated but its text states that the two entities did not enter into the agreement until April 24, 2000. *See* May 17 Letter, Ex. C, at unnumbered second page. Thus, there was "no joint defense effort or strategy," *Schwimmer*, 892 F.2d at 243, in place in 1999 when the Disputed Documents were created.

The case of *United States v. United Techs.*, 979 F.Supp. 108 (D.Conn.1997), cited by the Bank, is not to the contrary. In that case, five aerospace companies entered into a "collaboration agreement" to form a consortium to produce jet engines. The Internal Revenue Service sought documents relating to the development of the agreement. The court concluded that the "goal" of the parties' dealings during the development of the agreement was to create a corporate structure "that would minimize the U.S. tax liability of all consortium members." *Id.* at 110. In other words, the very purpose of the parties' dealings was to reduce their legal liability for taxes and each of the companies had identical interests in this respect. The agreement between the parties permitted the executives of each company to obtain legal advice from each other's attorneys in order to effectuate the purpose of reducing their tax liability. The court concluded that the parties therefore shared a common "legal" interest. Here, by contrast, the parties' agreement was not made to achieve some legal goal—such as the avoidance of tax liability—but rather to embark on a commercial venture. The parties' interests, while similar, were not identical with respect to this venture. Nor was there any agreement that explicitly provided that the parties would be seeking advice from each other's counsel.

For these reasons, the Bank has not met its burden of establishing privilege under federal law.

*The Common Interest Doctrine Under New York Law*

■ The Bank fares even worse under New York law. The only New York Court of Appeals case on the common interest doctrine deals with a criminal proceeding. *See People v. Osorio*, 75 N.Y.2d 80, 85, 550 N.Y.S.2d 612, 549 N.E.2d 1183 (1989) (statements by co-defendants mounting a common defense are privileged if made with the purpose of supporting their common defense). While lower court cases have applied the doctrine to civil matters, they have explicitly limited the doctrine to "communication between counsel and parties with respect to legal advice *in pending or reasonably anticipated litigation.*" *Aetna Cas. and Sur. Co. v. Certain Underwriters at Lloyd's London*, 176 Misc.2d 605, 612, 676 N.Y.S.2d 727 (1998) (emphasis added), *aff'd*, 263 A.D.2d 367, 692 N.Y.S.2d 384 (1st Dep't 1999); *see also Parisi v. Leppard*, 172 Misc.2d 951, 957, 660 N.Y.S.2d 307 (1997) ("a proper assertion of the privilege in a given instance therefore will rest on whether the exchange was for the purpose of giving and receiving legal counsel in or in anticipation of litigation, as opposed to transmitting information that was business-oriented ... in nature"); 8 Carmody–Waite New York Practice 2d § 56:198 (2002) ("[t]he common interest exception, ... is limited to communications ... with respect to advice in pending or reasonably anticipated litigation"). Thus, existing New York case law would not permit application of the doc-

trine to the Disputed Documents and there is no reason to believe the New York courts would extend the doctrine beyond what is permitted by federal law. Thus, the Bank's claim of privilege fails under New York law as well.

## CONCLUSION

Terra Nova's request for an order compelling the production of the Disputed Documents is granted.