[998 NYS2d 329]

Ambac Assurance Corporation et al., Respondents, v Countrywide Home Loans, Inc., et al., Defendants, and Bank of America Corp., Appellant.

First Department, December 4, 2014

---

### APPEARANCES OF COUNSEL

*O'Melveny & Myers LLP*, New York City (*Jonathan Rosenberg, B. Andrew Bednark* and *Anton Metlitsky* of counsel), for appellant.

*Patterson Belknap Webb & Tyler LLP,* New York City (*Robert P. LoBue, Peter W. Tomlinson, Harry Sandick* and *Joshua Kipnees* of counsel), for respondents.

### OPINION OF THE COURT

MOSKOWITZ, J.

In general, the presence of a third party at a communication between counsel and client is sufficient to deprive the communication of confidentiality. However, there is an exception to this rule: the common-interest privilege. Under this doctrine, a third party may be present at the communication between an attorney and a client without destroying the privilege if the communication is for the purpose of furthering a nearly identical legal interest shared by the client and the third party. New York courts have taken a narrow view of the common-interest privilege, holding that it applies only with respect to legal advice in pending or reasonably anticipated litigation. On this appeal, we are asked to decide the continued viability of the New York approach.

We hold that, in today's business environment, pending or reasonably anticipated litigation is not a necessary element of the common-interest privilege. Our conclusion holds particularly true in this case, where the parties have a common legal interest because they were engaged in merger talks during the relevant period and now have a completed and signed merger agreement. Indeed, the circumstances presented in this case illustrate precisely the reason that the common-interest privilege should apply—namely, that business entities often have important legal

interests to protect even without the looming specter of litigation.

Facts

This discovery dispute arose from a lawsuit commenced by plaintiff Ambac Assurance Corporation (Ambac), a financial-guaranty, or monoline, insurer that guaranteed payments on certain residential mortgage backed securities (RMBS) issued by defendant Countrywide Home Loans, Inc. and its affiliated entities (together Countrywide). The complaint alleged that between 2004 and 2006, Countrywide fraudulently induced Ambac to enter into agreements to insure RMBS transactions. Ambac further alleged that Countrywide breached, and continues to breach, the terms of those agreements.

Ambac also asserted secondary claims against defendant Bank of America Corp. (BAC), alleging that BAC would be liable for any judgment as Countrywide's successor-in-interest. These secondary claims relate to a merger between a BAC subsidiary and Countrywide Financial Corp. (CFC), a Countrywide entity. After due diligence and negotiations, CFC and BAC signed a merger agreement on January 11, 2008; under the terms of that agreement, CFC would merge into the wholly-owned BAC subsidiary, Red Oak Merger Corporation (the merger). The transaction closed on July 1, 2008, and the companies merged. All information and material exchanged between BAC and CFC under the merger agreement was subject to confidentiality provisions and a common-interest agreement the parties entered into shortly before they signed the merger agreement.

The merger agreement bound the parties to work together on several pre-closing issues, including maintaining employee benefit plans, consulting on state and federal tax consequences, and securing the appropriate merger approvals and consents of third parties and regulators. Because all shares of CFC would be converted into BAC shares, BAC and CFC intended to prepare and file a joint proxy and registration statement that would serve both to obtain CFC shareholder approval of the merger and to allow BAC to register its new shares. The joint statement required Securities and Exchange Commission approval before becoming effective. Because of these and other merger agreement provisions, BAC claims that it and CFC—two heavily regulated public financial institutions—required shared legal advice from counsel together in order to ensure their accurate compliance with the law and to advance their common interests in resolving the many legal issues necessary for successful completion of the merger.

The resulting communications between BAC and CFC and their counsel during the pre-merger period of January 11, 2008 to July 1, 2008—some several hundred documents—are at issue on this appeal. Ambac argues that BAC must produce these pre-merger communications because they are significant to Ambac's successor liability claims, which arise from the merger and the merger's associated transfers of assets and liabilities to BAC. Ambac further argues that documents BAC previously produced in the underlying litigation suggest that BAC may have been "put on notice of the prevalence of unreported fraud at Countrywide well before the [merger]."

In June 2013, the referee supervising discovery granted Ambac's motion to compel BAC to produce the challenged communications (2013 NY Slip Op 32568[U] [2013]). The referee held that New York law does not permit the withholding of a large class of joint communications between parties and their counsel, thereby immunizing the communications from disclosure. The referee concluded that the common-interest rule, an exception to the attorney-client privilege, does not apply unless the parties share a common legal interest that impacts potential litigation involving all parties, and that to hold otherwise would be inconsistent with the narrow scope of the attorney-client privilege.

The motion court denied BAC's motion to vacate the referee's order. In so doing, the court agreed that New York law requires pending or reasonably anticipated litigation in order for the common-interest doctrine to apply (41 Misc 3d 1213[A], 2013 NY Slip Op 51673[U] [2013]). The court concluded that BAC sought not an application of existing law, but rather "an extension of New York's common-interest doctrine" (2013 NY Slip Op 51673[U], *2).

Analysis

As noted above, the common-interest privilege is an exception to the rule that the presence of a third party at a communication between counsel and client will render the communication nonconfidential (*Kelly v Handy & Hartman*, 2009 WL 2222712, *2, 2009 US Dist LEXIS 63715, *5-6 [SD NY, July 23, 2009, No. 08 Civ 0163(KMK)(GAY)]). The doctrine, a limited exception to waiver of the attorney-client privilege, requires that: (1) the communication qualify for protection under the attorney-client privilege; and (2) the communication be made for the purpose of furthering a legal interest or strategy common to the parties (*see id.*; *see also U.S. Bank N.A. v APP Intl. Fin. Co.*, 33 AD3d

430, 431 [1st Dept 2006]). This Court has never squarely decided whether there is a third requirement: that the communication must affect pending or reasonably anticipated litigation. We answer that question today in the negative.

To properly understand the common-interest doctrine, it is necessary to examine the purpose of the privilege from which it descends—namely, the attorney-client privilege. The attorney-client privilege is "the oldest among common-law evidentiary privileges" (*Spectrum Sys. Intl. Corp. v Chemical Bank*, 78 NY2d 371, 377 [1991]). The purpose of this privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice" (*Upjohn Co. v United States*, 449 US 383, 389 [1981]).

Further, "[i]n New York, we recognize that 'the public interest is served by shielding certain communications . . . from litigation, rather than risk stifling them altogether' " (*U.S. Bank N.A. v APP Intl. Fin. Co.*, 33 AD3d 430, 431 [1st Dept 2006], quoting *Liberman v Gelstein*, 80 NY2d 429, 437 [1992]). A delicate balance exists between this goal and the CPLR's objective of "full disclosure of all evidence material and necessary in the prosecution or defense of an action" (CPLR 3101 [a]). Indeed, as the Court of Appeals has noted, an "[o]bvious tension exists between the policy favoring full disclosure and the policy permitting parties to withhold relevant evidence" (*Spectrum Sys. Intl. Corp.*, 78 NY2d at 377). Consequently, the party asserting the privilege has the burden of establishing any right to protection (*id.*).

The "attorney-client privilege is not tied to the contemplation of litigation," because "advice is often sought, and rendered, precisely to avoid litigation, or facilitate compliance with the law, or simply to guide a client's course of conduct" (*id.* at 380). For that reason, and because of "the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, constantly go to lawyers to find out how to obey the law, particularly since compliance with the law in this area is hardly an instinctive matter" (*Upjohn Co.*, 449 US at 392 [internal quotation marks and citations omitted]).

Similarly, the Restatement of the Law Governing Lawyers notes that the common-interest privilege is not tied to the contemplation of litigation, but rather that the privilege applies either to a "litigated or nonlitigated matter" (Restatement

[Third] of the Law Governing Lawyers § 76 [2000]). This conclusion flows logically from the attorney-client privilege, from which the common-interest privilege derives, and furthers its same basic purpose—namely, it "encourages parties with a shared legal interest to seek legal assistance in order to meet legal requirements and to plan their conduct accordingly," and therefore "serves the public interest by advancing compliance with the law, facilitating the administration of justice and averting litigation" (*United States v BDO Seidman, LLP*, 492 F3d 806, 816 [7th Cir 2007], *cert denied sub nom. Cuillo v United States*, 552 US 1242 [2008] [internal quotation marks omitted]).

Neither this Court nor the Court of Appeals has yet considered the propriety of a litigation requirement for the common-interest privilege. However, the federal courts that have addressed the issue have overwhelmingly rejected that requirement. For example, in *United States v Schwimmer* (892 F2d 237 [2d Cir 1989]), an appeal concerning criminal codefendants, the Second Circuit took a more liberal approach to the common-interest doctrine, holding that the communications between the defendants and their counsel were protected from disclosure because the doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel" (*id.* at 243).

The Second Circuit further held, "The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter" (*id.* at 243 [internal quotation marks and citation omitted]). Thus, the court concluded, it was "unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply" (*id.* at 244; *see also In re Teleglobe Commns. Corp.*, 493 F3d 345, 364 [3d Cir 2007] ["community-of-interest privilege . . . applies in civil and criminal litigation, and even in purely transactional contexts"]; *BDO Seidman, LLP*, 492 F3d at 816 ["communications need not be made in anticipation of litigation to fall within the common interest doctrine"]; *In re Regents of Univ. of Cal.*, 101 F3d 1386, 1390-1391 [Fed Cir 1996], *cert denied sub nom. Genentech, Inc. v Regents of the Univ. of Cal.*, 520 US 1193 [1997] [holding that common-interest doctrine "is not limited to actions taken and advice obtained in the shadow of litigation"]).

The IAS court rejected BAC's argument advancing *Schwimmer*, finding that the Second Circuit had held that there must

be a reasonable anticipation of litigation, not actual litigation in progress, for the common-interest doctrine to apply. We disagree with this interpretation of *Schwimmer*. The Second Circuit did not discuss the "reasonable anticipation of litigation" requirement, and in fact, a fair reading of the case makes clear that the court rejected that interpretation. Indeed, the United States District Court for the Southern District of New York has observed, "Although the [common interest] doctrine is most frequently applied in the context of litigation, it also has been successfully invoked with respect to joint legal strategies in non-litigation settings" (*Fox News Network, LLC v United States Dept. of the Treasury*, 739 F Supp 2d 515, 563 [SD NY 2010]).

Accordingly, because the federal approach extends logically from the attorney-client privilege, we adopt this approach, the weight of which "holds that litigation need not be actual or imminent for communications to be within the common interest doctrine" (*Dura Global, Tech., Inc. v Magna Donnelly Corp.*, 2008 WL 2217682, *3, 2008 US Dist LEXIS 41432, *10 [ED Mich, May 27, 2008, No. 07-CV-10945-DT]). So long as the primary or predominant purpose for the communication with counsel is for the parties to obtain legal advice or to further a legal interest common to the parties, and not to obtain advice of a predominately business nature, the communication will remain privileged (*see Rossi v Blue Cross & Blue Shield of Greater N.Y.*, 73 NY2d 588 [1989]; *see also Delta Fin. Corp. v Morrison*, 69 AD3d 669 [2d Dept 2010]).

We acknowledge that a line of New York cases requires pending or reasonably anticipated litigation for the common-interest privilege to apply (*see Hyatt v State of Cal. Franchise Tax Bd.*, 105 AD3d 186, 205 [2d Dept 2013]; *Hudson Val. Mar., Inc. v Town of Cortlandt*, 30 AD3d 377, 378 [2d Dept 2006]; *Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd's, London*, 176 Misc 2d 605, 612-613 [Sup Ct, NY County 1998], *affd* 263 AD2d 367 [1st Dept 1999], *lv dismissed* 94 NY2d 875 [2000]; *see also Allied Irish Banks, P.L.C. v Bank of Am., N.A.*, 252 FRD 163, 171-172 [SD NY 2008]).

However, the better policy requires that we diverge from this approach. These cases provide that when two parties with a common legal interest seek advice from counsel together, the communication is not privileged unless litigation is within the parties' contemplation; on the other hand, when a single party seeks advice from counsel, the communication is privileged regardless of whether litigation is within anyone's contempla-

tion. We cannot reconcile this contradiction, as it undermines the policy underlying that attorney-client privilege.[1]

The litigation requirement appears to have developed from the common-interest privilege as it applies in the criminal context; several courts then applied that interpretation of the privilege directly to the civil context. For example, in *Parisi v Leppard* (172 Misc 2d 951, 955 [Sup Ct, Nassau County 1997]), a case involving the breakup of a medical practice, the court acknowledged the use of the privilege in criminal cases, where "a defendant and his counsel may expect that confidences will be kept in a joint meeting with a codefendant and the latter's attorney—if the purpose of the meeting is to share information in furtherance of a common defense." Based on its reading of the Court of Appeals' description of the common-interest privilege in *People v Osorio* (75 NY2d 80 [1989]), the court stated that "the . . . common interest extension does not cover a multiparty meeting where the subject is anything other than a common defense in a pending case" (*Parisi*, 172 Misc 2d at 955-956). Thus, the court opined that the privilege was "considerably narrower" than the attorney-client privilege from which it derives (*id.*).

While acknowledging that the "Court of Appeals had no reason to address the scope of the privilege in any context other than the one before it, i.e., a pending criminal matter" and that the common-interest privilege may apply in a similar fashion in the civil context, the court then concluded that the privilege was best applied only in cases that involved either pending or "potential litigation" (*id.* at 956). One year later, the *Parisi* court's holding formed the basis of *Aetna Cas. & Sur. Co.* (176 Misc 2d at 611).[2] Recently, *Aetna*'s holding formed the basis of *Hyatt v State of Cal. Franchise Tax Bd.* (105 AD3d 186, 205 [2d Dept 2013]).

We find, however, that this line of cases does not adequately address the specific situation presented here: two business entities, having signed a merger agreement without contemplating litigation, and having signed a confidentiality agreement,

---

**1.** We recently addressed a similar issue in *National Union Fire Ins. Co. of Pittsburgh, Pa. v TransCanada Energy USA, Inc.* (114 AD3d 595 [1st Dept 2014]). However, we recalled and vacated that decision, finding in the later decision (119 AD3d 492 [1st Dept 2014]) that we did not need to reach the issue because the documents at issue were not, in fact, privileged; rather, "counsel were primarily engaged in claims handling—an ordinary business activity for an insurance company" (*id.* at 493).

**2.** This Court later affirmed that case on different grounds.

required the shared advice of counsel in order to accurately navigate the complex legal and regulatory process involved in completing the transaction. As BAC aptly asserts, imposing a litigation requirement in this scenario discourages parties with a shared legal interest, such as the signed merger agreement here, from seeking and sharing that advice, and would inevitably result instead in the onset of regulatory or private litigation because of the parties' lack of sound guidance from counsel. This outcome would make poor legal as well as poor business policy.

We are further guided by Delaware's approach to the common-interest privilege. Delaware has codified the common-interest privilege, extending the attorney-client privilege to certain communications by clients, their representatives or their lawyers to a lawyer "representing another in a matter of common interest" (Del Uniform Rules of Evid rule 502 [b] [3]). Thus, Delaware recognizes that disclosure may be confidential even when made between lawyers representing different clients if those clients have a common interest—that is, an interest that is "so parallel and non-adverse that, at least with respect to the transaction involved, [they] may be regarded as acting as joint venturers" (*3Com Corp. v Diamond II Holdings, Inc.*, 2010 WL 2280734, *7, 2010 Del Ch LEXIS 126, *32 [May 31, 2010, No. 3933-VCN], quoting *Jedwab v MGM Grand Hotels, Inc.*, 1986 WL 3426, *2, 1986 Del Ch LEXIS 383, *5 [Mar. 20, 1986, No. 8077]). We believe that Delaware presents the better approach.

We need not decide whether there are any grounds for turning over the documents at issue here, or whether any particular document does or does not fall within the common-interest privilege. We remand for the motion court or its designated special referee or special master to conduct a review for the purpose of deciding which, if any, documents are subject to that privilege.

Accordingly, the order of the Supreme Court, New York County (Eileen Bransten, J.), entered October 16, 2013, which denied defendant BAC's motion to vacate the decision of the Special Referee, holding that documents relating to the pending merger between BAC and CFC are not protected from disclosure by the common-interest doctrine, should be unanimously reversed, on the law, without costs, the motion granted, and the matter remanded for further proceedings.

TOM, J.P., DEGRASSE, RICHTER and KAPNICK, JJ., concur.

Order, Supreme Court, New York County, entered October 16, 2013, reversed, on the law, without costs, the motion granted, and the matter remanded for further proceedings.