Rivera, J.
(dissenting). The purpose of the attorney-client privilege is to encourage candid and open communication between client and attorney to promote the public interest “in the observance of law and administration of justice” (Upjohn Co. v United States, 449 US 383, 389 [1981]). The assumption justifying this oldest of common-law evidentiary privileges is *633 that it “fosters the open dialogue between lawyer and client that is deemed essential to effective representation” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377 [1991] [citations omitted]). Effective representation furthers the goal of compliance with the law, thus benefitting not only clients but society in general.
Whether this privilege should extend to confidential communications between separately represented parties, who have a common legal interest in a transaction, not involving pending or reasonably anticipated litigation, is the question posed in this appeal, and one which I would answer in the affirmative under the circumstances presented here. Given that the attorney-client privilege has no litigation requirement and the reality that clients often seek legal advice specifically to comply with legal and regulatory mandates and avoid litigation or liability, the privilege should apply to private client-attorney communications exchanged during the course of a transforma-tive business enterprise, in which the parties commit to collaboration and exchange of client information to obtain legal advice aimed at compliance with transaction-related statutory and regulatory mandates.
I.
The attorney-client privilege recognized at common law and codified at Civil Practice Law and Rules § 4503 “protects confidential communications between a lawyer and client relating to legal advice sought by the client” (Matter of Nassau County Grand Jury Subpoena Duces Tecum Dated June 24, 2003, 4 NY3d 665, 678 [2005]; see CPLR 4503). The privilege “encourage [s] full and frank communication between attorneys and their clients and thereby promote [s] broader public interests in the observance of law and administration of justice” (Upjohn Co., 449 US at 389; Rossi v Blue Cross & Blue Shield of Greater N.Y., 73 NY2d 588, 592 [1989]; Matter of Jacqueline F., 47 NY2d 215, 218 [1979]). The free flow of information promotes effective representation based on “sound legal advice or advocacy,” leading, optimally, to the salutary goal of lawfully compliant behavior (see Upjohn Co., 449 US at 389-390; Spectrum Sys. Intl. Corp., 78 NY2d at 381; United States v Schwimmer, 892 F2d 237, 243 [2d Cir 1989]). This goal justifies treatment of the privilege “as an exception to the general requirement that all persons give testimony upon facts within their personal knowledge inquired of in a court of law” (Jacqueline F., 47 NY2d at 219).
*634 Notably, the privilege “is not tied to the contemplation of litigation” (Spectrum Sys. Intl. Corp., 78 NY2d at 380) because litigation may not be the motivating factor leading to a client’s communication of private information. Rather, “[l]egal advice is often sought, and rendered, precisely to avoid litigation, or facilitate compliance with the law, or simply to guide a client’s course of conduct” (id.). All the more so in the corporate context, where corporate staff attorneys
“may serve as company officers, with mixed business-legal responsibility; whether or not officers, their day-to-day involvement in their employers’ affairs may blur the line between legal and nonlegal communications; and their advice may originate not in response to the client’s consultation about a particular problem but with them, as part of an ongoing, permanent relationship with the organization” (Rossi, 73 NY2d at 592-593).
In determining “what is encompassed by the privilege, courts . . . must look to the common law” (Spectrum Sys. Intl. Corp., 78 NY2d at 377). However, our inquiry considers the circumstances of each case, relevant general principles, and public policy informing the proper application of the privilege (Matter of Priest v Hennessy, 51 NY2d 62, 68-69 [1980]; Spectrum Sys. Intl. Corp., 78 NY2d at 380). In our analysis, just as we are cautious not to extend the privilege beyond the bounds of necessity, we also carefully measure waivers of the privilege to protect the parties’ reasonable expectations in the privacy of their communications (People v Osorio, 75 NY2d 80, 84-85 [1989]).
As the majority well details, third-party communications destroy the privilege (majority op at 624). This waiver rule is subject to limitations that promote communication and effective legal representation, as well as the parties’ reasonable expectations in confidentiality (Osorio, 75 NY2d at 84-85; see majority op at 624-625).
Those same concerns were present in People v Osorio, when this Court recognized an exception to the waiver rule in the criminal context — referred to as the “joint defense exception” — by which a court treats as privileged any statements disclosed by one defendant in the presence of a codefendant, where the disclosure is for the purpose of mounting a common defense (75 NY2d at 85). The Court concluded that under those *635 circumstances a defendant has an expectation of the continued confidentiality between attorney and defendant (id,.).
Not long thereafter New York courts extended the underlying rationale of Osorio to civil cases (see Parisi v Leppard, 172 Misc 2d 951, 956 [Sup Ct, Nassau County 1997]; Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd’s, London, 176 Misc 2d 605, 612-613 [Sup Ct, NY County 1998], affd 263 AD2d 367 [1st Dept 1999], lv dismissed 94 NY2d 875 [2000]). Those courts generally required pending or reasonably anticipated litigation in order to apply what was often termed a common interest privilege (see e.g. Hyatt v State of Cal. Franchise Tax Bd., 105 AD3d 186, 205 [2d Dept 2013]; Hudson Val. Mar., Inc. v Town of Cortlandt, 30 AD3d 377, 378 [2d Dept 2006]).
However, it is worthy of note that the majority of federal courts that have addressed the issue, and a significant number of state jurisdictions, either through case law or by statute, have held that the privilege applies even if litigation is not pending or reasonably anticipated.[1] Several legal commentators also support a broad application of the privilege. For example, the Restatement (Third) of the Law Governing Lawyers has adopted a rule that applies the attorney-client privilege to disclosures by clients with a common interest in litigated or nonlitigated matters (Restatement [Third] of Law Governing Lawyers § 76 [2000]). Similarly, Weinstein’s on Evidence explains that the common interest doctrine “should apply not only if litigation is current or imminent but whenever the communication is made in order to facilitate the rendition of legal services to each of the clients involved in the confer *636 ence” (3-503 Weinstein’s Federal Evidence § 503.21 [2] [2015]). Indeed, many courts and commentators recognize the important interests served by the free flow of information between parties with a common legal interest, even without the threat of litigation (see BDO Seidman, LLP, 492 F3d at 816; In re Regents of Univ. of Cal., 101 F3d at 1390-1391).
Given the purpose of the attorney-client privilege to encourage communication essential to the rendition of adequate legal advice, I agree with the majority that we should stamp our imprimatur on a “common interest doctrine” and its application in civil cases (majority op at 620, 628). I part company from the majority in its adoption of a pending or reasonably anticipated litigation requirement. Such requirement does not derive from the common-law roots of the attorney-client privilege, which lacks any litigation requirement. Further, the rule adopted by the majority ignores the unique common legal interests of parties to a merger, and the statutory and regulatory compliance mandates as motivating factors for client exchanges in these types of commercial transactions. The better rule is grounded not in the rote application of a litigation requirement, but in the legal dynamics of a modern corporate transactional practice.
II.
A.
The legal demands of a highly-regulated financial business environment affect the management of information shared between client and attorney where separately represented parties work collaboratively towards a mutual goal of transforming existing business entities and relationships. Confidences shared with attorneys under an appropriate common-law privilege may further compliance with legal mandates.
Where the government imposes regulatory and legal requirements that invariably, if not specifically, anticipate disclosure of information that is best developed by cooperation among clients, application of the attorney-client privilege strikes an appropriate balance between the benefits of disclosure — ensuring legal advice that advances the creation of accurate and compliant legally mandated information — and the costs to the truth-seeking process of our legal system from barring discovery of certain information. The privilege should apply where disclosure of client communications facilitates the provi *637 sion of legal services to advance a joint strategy developed to ensure compliance with regulatory or other legal mandates for the production of documents, and the framing of legal positions, necessitated by regulatory and legal obligations. It should apply to nonlitigation transactional matters in which the separately represented parties share a common legal interest in the transfer of liability to a successor, and in furtherance of which the parties exchange information in the presence of a third party to facilitate legal advice on a common strategy for compliance with statutory and regulatory requirements, necessarily accomplished by production of joint representations essential to the transformative enterprise (see Anne King, The Common Interest Doctrine and Disclosures During Negotiations for Substantial Transactions, 74 U Chi L Rev 1411, 1417 [2007]).
As relevant to this appeal, where parties to a merger agreement have a common legal interest in the successful completion of the merger, the privilege should apply to communications exchanged to comply with legal and regulatory requirements related to consummation of the merger. This application of the privilege functions as a narrowly crafted exception to third-party waivers in the merger context, and is justified because signatories to a pre-merger agreement are bound with a common interest in completion of the merger. In such case, the privilege would maximize the quality of disclosure necessary for accurate and competent representation leading to compliance with regulatory and legal mandates. In other words, the privilege encourages parties committed to a merger to disclose confidential information to avoid submission of incomplete or noncompliant documents.
B.
The majority concludes that the common interest doctrine should apply solely to “codefendants, coplaintiffs or persons who reasonably anticipate that they will become colitigants” because for these actors, the threat of mandatory disclosure “may chill the parties’ exchange of privileged information” necessary to “coordinate legal strategy” or “mount a common claim or defense” (majority op at 628). The majority’s reasoning for adopting a litigation requirement is doctrinally and pragmatically unpersuasive.
First, the common interest doctrine is grounded in the attorney-client privilege, which has no litigation requirement. *638 Indeed, the majority’s underlying premise — that the privilege is necessary to entice parties to share confidential information they would otherwise refuse to divulge — is true for any person who seeks legal advice without the threat of litigation. Yet, this Court has rejected this limitation on the common-law and statutory privilege (Spectrum Sys. Intl. Corp., 78 NY2d at 380). The majority responds that the common interest doctrine need not be coextensive with the attorney-client privilege because it is not an evidentiary privilege or an independent basis for the attorney-client privilege (majority op at 630). Putting aside that the doctrinal status of the common interest doctrine is contested (see Katharine Traylor Schaffzin, An Uncertain Privilege: Why the Common Interest Doctrine Does Not Work and How Uniformity Can Fix It, 15 BU Pub Int LJ 49, 53 [2005]), the fact is that we are called upon in this case not to create subclassifications for client-attorney communications, but to determine “what is encompassed by the [attorney-client] privilege” (Spectrum Sys. Intl. Corp., 78 NY2d at 377).
Which leads to the second flaw in the majority’s analysis, namely its limited view of the attorney-client privilege in a transaction such as a merger. The majority rejects the application of the privilege in this case as unnecessary because parties to a business deal already have an incentive to share information that will close the transaction. However, the majority fails to identify any distinction between coparties or persons who reasonably anticipate litigation, and parties committed to the completion of a merger. Both are incentivized to cooperate in order to secure a mutually beneficial outcome — one a successful litigation outcome, the other a successful commercial outcome. No rational basis exists to recognize the expectations for maintaining confidences in the former but not the latter.
Furthermore, to the extent the majority attempts to set a bright-line rule, that the common interest doctrine should apply only where parties with a common legal interest share information in reasonable anticipation of litigation, it ignores the inherent vagueness in the term. Indeed, whether the parties reasonably anticipated litigation inevitably requires judicial consideration of case-specific facts.
Third, the majority’s contention that application of the privilege might lead to misuse is purely speculative (majority op at 629-630). The majority notes the “potential for abuse” of the common interest doctrine in the context of corporate attorneys representing multiple clients (id.). However, there is *639 certainly as much or more such potential in assertions of the common interest doctrine by those “anticipating” litigation and seeking to shield communications from a potential adversary. In any event, the majority fails to explain why a party’s attempted abuse of the privilege cannot be addressed through our legal system’s existing methods for preventing and sanctioning obstruction of proper discovery (see e.g. CPLR 3126 [authorizing court to penalize for refusal to comply with order or to disclose]).
There is also nothing to support the majority’s contention that the privilege will sweep too broadly due to the difficulty of differentiating between common legal interests and strictly business interests (majority op at 629-630). To the contrary, courts realize that while the privilege encourages and protects an open flow of communication, its scope extends only as necessary to achieve its common-law and statutory purposes of compliance with the law and effectuating the orderly administration of justice (see Spectrum Sys. Intl. Corp., 78 NY2d at 380; Rossi, 73 NY2d at 592). As a consequence the privilege is limited to matters of common legal interest, and does not protect from discovery communications exchanged to further commercial or personal interests in the business deal, or efforts to leverage information to enhance a client’s financial position. The fact is that courts are fully equipped to take on this challenge and it is what they regularly do in discovery: separate privileged communications from nonprivileged. This is certainly the case in numerous federal and state courts that have adopted a nonlitigation version of the common interest doctrine without disastrous results,[2] and there is no reason to presume New York courts are any less capable of making these same determinations. Hence, in a corporate merger case, like the one before us, the common interest doctrine applies to communications made in the presence of third parties in order to obtain legal advice on the preparation of a joint proxy statement and federal securities registration, but would not shield from discovery client information shared during negotiations related solely to commercial interests.
Significantly, the common interest doctrine is also circumscribed by two requirements. First, the communication must *640 satisfy the requirements of the attorney-client privilege (Schwimmer, 892 F2d at 244 [holding that a “claim resting on the common interest rule requires” the same showing as “all claims of privilege arising out of the attorney-client relationship”]). Second, the communication must further “a common legal interest” — rather than commercial interest — of the relevant parties (Schaeffler v United States, 806 F3d 34, 40-41 [2d Cir 2015]).
The discovery process in the present case is instructive. The challenged communications at issue consist of 366 communications made during the six-month period between the signing of the pre-merger agreement and the merger. After Bank of America withdrew the claim of privilege with respect to 28 of those communications, a special referee conducted a review to determine whether the remaining communications were properly withheld. Those communications were distilled down to corresponding documents, and the special referee reviewed a total of 117 documents to determine whether (1) each qualified for protection under the attorney-client privilege; and (2) if so, whether that document was made for the purpose of furthering a legal interest or strategy common to Bank of America and Countrywide. As a result, three of the documents were found not to qualify for the privilege because no legal advice was given or requested, and an additional three were determined to contain both privileged and non-privileged material, requiring redaction. The remaining 111 documents were deemed privileged under the common interest doctrine. Clearly the process served to ensure that only this very limited universe of documents from a finite period in the transaction fell squarely within the bounds of the common interest doctrine and were therefore properly withheld.
As an additional layer of protection, the crime-fraud exception to the attorney-client privilege continues to permit discovery of communications “when the advice sought relates ‘not to prior wrongdoing, but to future wrongdoing’ ” (BDO Seidman, LLP, 492 F3d at 818 [internal quotation marks and emphasis omitted], quoting Zolin, 491 US at 562-563; see Matter of New York City Asbestos Litig., 109 AD3d 7, 10-11 [1st Dept 2013] [crime-fraud exception applies to communications made in furtherance of the fraud or crime]).
III.
Here, the privileged communications were made in furtherance of consummating the merger of defendant Countrywide *641 Financial Corporation and its subsidiaries with defendant Bank of America Corporation’s wholly-owned subsidiary, Red Oak Merger Corporation. Defendant Bank of America is a public holding company regulated by the Bank Holding Company Act (12 USC § 1841 et seq.), and its subsidiary, Bank of America, N.A., is a federally chartered bank, governed by the National Bank Act (12 USC § 21 et seq.) and regulated by the Office of the Comptroller of the Currency and the Federal Reserve Board (see 12 USC § 1828).[3] Countrywide Financial’s subsidiary bank was regulated by the Office of Thrift Supervision (see 12 USC § 1461 et seq. [Home Owners’ Loan Act]).[4] Both Countrywide Financial and Bank of America were public reporting companies and, in anticipation of the merger, were required to satisfy US Securities and Exchange Commission (SEC) regulations, necessitating filing of a proxy statement to stockholders, the SEC’s Form 8-K (i.e. to notify investors of the status of the target company’s outstanding stock) and Form S-4 (i.e. to register newly issued shares acquired from the target company).
The documents for which defendants assert the privilege thus fit neatly within the attorney-client privilege as refined by the common interest doctrine. The defendants’ attorneys prepared disclosures required by federal law, including SEC joint proxy statements and a Form S-4 registration statement. Countrywide was required to obtain the approval of its public shareholders by soliciting proxies, which in turn required it to file a proxy statement. Bank of America Corporation registered the newly issued Bank of America shares it was using to pay for Countrywide’s outstanding shares. Bank of America and Countrywide Financial also prepared preliminary and amended disclosures necessary for this joint proxy/registration statement filing.
Bank of America and Countrywide attorneys provided legal advice regarding notice of the acquisition to Countrywide’s subsidiary bank account holders via the filing of a proxy statement, and Bank of America and Countrywide consulted on *642 providing legal advice regarding draft written testimony in preparation for and in response to Federal Reserve hearings. Additionally, Bank of America and Countrywide attorneys communicated regarding analyses of lending and servicing practices to ensure that immediately after the merger’s closing, the new mortgage business would comply with all applicable mortgage lending and servicing regulations, including fair-lending laws, consumer-protection laws, foreign registration requirements, and conform to changes in the governing state and federal regulations. Under these circumstances, the privilege should extend to defendants’ pre-merger client communications, exchanged to secure legal advice in furtherance of defendants’ common interest in the merger.
IV.
The attorney-client privilege is a long-standing exception to the general rule promoting discovery as part of the truth-finding process, and one tolerated because it serves the individual and societal goals of furthering the proper administration of justice by encouraging the free flow of information essential to legal representation. It has never been limited to client communications involving pending or anticipated litigation. Even so, the privilege is deemed waived where a client shares information with a third party, under circumstances that reflect the client’s disinterest in the continued protection of the confidences. However, where parties to a merger seek to comply with legal requirements and agree to treat as confidential any exchanges of information made for purposes of seeking legal and regulatory advice to complete the merger, the parties cannot be assumed to have vitiated the private nature of the information, or to harbor an unreasonable expectation of privacy in these exchanges. Therefore, extension of the attorney-client privilege to these communications is fully in line with the goals of our common law and the needs of our complex system of commercial regulation.
Judges Abdus-Salaam, Stein and Fahey concur; Judge Rivera dissents in an opinion in which Judge Garcia concurs; Chief Judge DiFiore taking no part.
Order of the Appellate Division, First Department, reversed, with costs, order of Supreme Court, New York County, reinstated and certified question answered in the negative.

. See United States v Zolin, 809 F2d 1411, 1417 (9th Cir 1987) (“Even where the non-party who is privy to the attorney-client communications has never been sued on the matter of common interest and faces no immediate liability, it can still be found to have a common interest with the party seeking to protect the communications”), affd in part, vacated in part on other grounds 491 US 554 (1989); United States v BDO Seidman, LLP, 492 F3d 806, 816 (7th Cir 2007); In re Teleglobe Communications Corp., 493 F3d 345, 364 (3d Cir 2007); In re Regents of Univ. of Cal., 101 F3d 1386, 1390-1391 (Fed Cir 1996); Schaeffler v United States, 806 F3d 34, 40 (2d Cir 2015); Hanover Ins. Co. v Rapo & Jepsen Ins. Servs., Inc., 449 Mass 609, 616, 870 NE2d 1105, 1111 (2007) (rejecting a litigation limitation on the common interest doctrine); Santa Fe Pac. Gold Corp. v United Nuclear Corp., 143 NM 215, 222, 175 P3d 309, 316 (2007) (“A third party to whom privileged disclosures are made under the common interest doctrine may be a nonparty to any anticipated litigation and may be a legal entity distinct from the client who receives the legal advice”); see also Del Rules Evid rule 502 (b) (3) (extending the attorney-client privilege to confidential communications made by the client to a lawyer “representing another in a matter of common interest”).

. See Zolin, 809 F2d 1411 (9th Cir 1987); BDO Seidman, LLP, 492 F3d 806 (7th Cir 2007); In re Teleglobe Communications Corp., 493 F3d 345 (3d Cir 2007); In re Regents of Univ. of Cal., 101 F3d 1386 (Fed Cir 1996).

. The Bank Holding Company Act also requires prior written approval from the Federal Reserve Board to acquire and to merge with another bank holding company (see 12 USC § 1842).

. In 2011, the Office of Thrift Supervision was transferred to the Office of the Comptroller of the Currency by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub L 111-203, §§ 1046, 1047 [b], 124 US Stat 1376, 2017 [2010]), and has ceased to exist (see 12 USC § 5413).